**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLA LYN CLIFTON,

      Defendant-Appellant.

No. 04-2046

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 03-CR-1101)**

---

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Hope Eckert, Attorney at Law, LLC (John D. Cline, Freedman Boyd Daniels Hollander Goldberg & Cline P.A., with her on the brief), Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **EBEL**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    A jury convicted Defendant Carla Lyn Clifton on three counts of knowingly making false declarations before a Federal grand jury in violation of 18 U.S.C. § 1623(a). The district court sentenced her to forty-one months imprisonment. Defendant appeals

her conviction and sentence. She argues the district court (1) improperly instructed the jury on reasonable doubt, (2) improperly allowed the Government to introduce inadmissible evidence under the guise of impeachment, and (3) imposed an incorrect and unconstitutional sentence under the United States Sentencing Guidelines ("Guidelines").[1] We have jurisdiction, 28 U.S.C. § 1291, affirm in part, and remand for re-sentencing.

## I.

The historical facts in this case arise out of the Drug Enforcement Administration's (DEA) investigation into a cocaine distribution ring in Albuquerque, New Mexico. The story, as portrayed in the light most favorable to the jury verdict, begins when the DEA seized 1.4 kilograms of crack cocaine from the home of Robert Beal. DEA agents thereafter learned an individual named "Jamie" with the cellular telephone number 450-5251 (the "5251-cell phone") supplied Beal with cocaine. The agents discovered that Defendant subscribed to the 5251-cell phone.

DEA agents Marcus West and David Tyree arrived unannounced at Defendant's home on January 27, 2003. Defendant's father, Douglas Clifton, answered the door and explained his daughter lived there with him, but she was not presently home. The agents

---

[1] The Supreme Court decided Blakely v. Washington, 124 S. Ct. 2531 (2004) and United States v. Booker, 125 S. Ct. 738 (2005) during the pendency of Defendant's appeal. We must apply the holdings in Blakely and Booker to all cases in which a defendant properly raised an issue under either case. Booker, 125 S. Ct. at 769. Defendant properly raised her Sixth Amendment issues in a supplemental brief. Compare United States v. Lindsey, 389 F.3d 1334, 1335 n.1 (10th Cir. 2004).

asked Mr. Clifton if he knew anything about a "Jamie Mendoza" or the 5251-cell phone. Mr. Clifton responded that his daughter may have obtained a cellular telephone for Mendoza because she had obtained cellular telephones for other individuals who, like Mendoza, had credit problems. The agents concluded their interview with Mr. Clifton and waited outside for Defendant to return home.

Defendant arrived at the house approximately an hour later. The agents approached Defendant, identified themselves, and asked her about Mendoza and the 5251-cell phone. Defendant told the agents she obtained the 5251-cell phone for Mendoza because he had credit problems. The agents thereafter agreed, upon Defendant's request, to finish the interview at a nearby gas station. At the gas station, Defendant reiterated she obtained the 5251-cell phone for Mendoza because of his credit problems. Defendant also informed the agents she cancelled the 5251-cell phone in October 2002 after Mendonza told her it had been stolen.

Defendant called Agent West the next morning. Defendant told the agent she wanted to "take back" everything she said during their interview the previous day. Defendant explained that she exclusively used the 5251-cell phone, Mendoza had never used it, and she had never said anything to the contrary. A grand jury subsequently subpoenaed Defendant. She appeared before the grand jury in February 2003 and testified, among other things, that (1) *nobody* except herself had used the 5251-cell phone, and (2) she had never told the agents anything to the contrary. Defendant's

3

testimony caused the DEA's investigation to "hit a brick wall" and prevented the grand jury from indicting Mendoza.

The Government suspected Defendant of perjury. The Government provided Defendant an opportunity to re-testify before the grand jury and, if necessary, recant her previous testimony. Defendant appeared voluntarily before the grand jury in May 2003, but did not recant her previous testimony. Instead, Defendant testified that "[i]n regards to [the 5251-cell phone], I had purchased that phone for myself. I have never given it to anybody to use. I have never knowingly let anybody use it."

Defendant's perjury indictment followed. The case proceeded to trial and a jury convicted Defendant on all three counts charged. With respect to the first count, the jury found Defendant falsely declared before the grand jury that "nobody" except herself had used the 5251-cell phone. With respect to the second count, the jury found Defendant falsely declared before the grand jury that she did not tell the DEA agents she had obtained a cellular telephone for Mendoza. With respect to the third count, the jury found Defendant falsely declared before the grand jury that she obtained the 5251-cell phone for herself and never knowingly let anyone use the telephone.

## II.

The grand jury functions as a barrier to reckless and unfounded charges the Executive Branch might otherwise bring against an individual. United States v. Cotton, 535 U.S. 625, 634 (2002). The "historic office" can only provide such a shield to

4

arbitrary and oppressive executive action when the grand jury acts pursuant to the truthful testimony of witnesses compelled to provide it information. United States v. Mandujano, 425 U.S. 564, 571, 576 (1976). Congress, recognizing the importance of a citizen's testimony before the grand jury, enacted § 1623 to facilitate perjury prosecutions and thereby enhance the reliability of testimony before Federal grand juries. Dunn v. United States, 442 U.S. 100, 107 (1979); see also Mandujano, 425 U.S. at 576 n.3.

The statute prohibits any person from knowingly making false material declarations under oath before a grand jury. See 18 U.S.C. § 1623(a). The Government must prove the following elements beyond a reasonable doubt under § 1623: (1) the defendant made a declaration under oath before a grand jury; (2) such declaration was false; (3) the defendant knew the declaration was false; and (4) the false declaration was material to the grand jury's inquiry. See Johnson v. United States, 520 U.S. 461, 465 (1997); United States v. Durham, 139 F.3d 1325, 1331 (10th Cir. 1998). With this backdrop, we turn to Defendant's specific claims of error.

## A.

To begin, Defendant argues the district court improperly instructed the jury on reasonable doubt. We review the sufficiency of a reasonable doubt instruction de novo. Tillman v. Cook, 215 F.3d 1116, 1123 (10th Cir. 2000). The Due Process Clause prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. Sullivan v. Louisiana, 508 U.S. 275, 278 (1993). The reasonable

5

doubt standard operates to give "concrete substance" to the presumption of innocence.

Jackson v. Virginia, 443 U.S. 307, 315 (1979).  The district court, as a result, must

instruct the jury on the subject.  Id. at 320 n.14.  The Due Process Clause does not,

however, "require that any particular form of words be used in advising the jury of the

government's burden of proof."  Victor v. Nebraska, 511 U.S. 1, 5 (1994).  A district

court instead "retain[s] considerable latitude in instructing juries on reasonable doubt[,]"

United States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995), and fulfills its constitutional

duty if the charge as a whole correctly conveys the concept of reasonable doubt.  Victor,

511 U.S. at 5.

In this case, the district court's instructions correctly conveyed the concept of

reasonable doubt to the jury.  The district court instructed the jury:

> The Superseding Indictment or formal charge against the defendant is not evidence of guilt.  Indeed, the defendant is presumed by the law to be innocent.  The law does not require a defendant to prove his innocence or produce any evidence at all.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.
> While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning defendant's guilt.
> A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in a case.

Defendant objected to the omission of the following sentence from the end of the

instruction:  "Proof beyond a reasonable doubt, therefore, is proof of such a convincing

character that you would be willing to rely and act upon it without hesitation in the most

6

important of your own affairs."  She argues the omission of the "crucial last sentence" unconstitutionally diluted the reasonable doubt standard.  We disagree.

The court's instruction correctly described the "persuasion by which the prosecution must convince the trier of all the essential elements of guilt."  In re Winship, 397 U.S. 358, 361 (1970) (internal quotations and citations omitted); see also United States v. Cronic, 466 U.S. 648, 656-57 n.19 (1984) (describing the prosecution's burden of proving guilt beyond a reasonable doubt as "heavy").  At the same time, the instruction correctly explained the Government need not prove Defendant's guilt "beyond all possible doubt."  See Jackson, 443 U.S. at 326 (explaining the Government need not rule out every hypothesis except guilt to carry its burden).  The district court's instruction then, again correctly, defined "reasonable doubt" as "a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case." See id. at 317 & n.9 (explaining reasonable doubt, at a minimum, is based upon reason after consideration of all the evidence); Victor, 511 U.S. at 20-21 (approving of "common sense" benchmarks when defining reasonable doubt).  The district court's instruction, therefore, "correctly conveyed the concept of reasonable doubt to the jury."  Holland v. United States, 348 U.S. 121, 140 (1954).  The Due Process Clause requires no more.[2]  We

_____

[2] Defendant's reliance on Monk v. Zelez, 901 F.2d 885 (10th Cir. 1990) (per curiam) and Proctor v. United States, 685 A.2d 735 (D.C. 1996) to argue the contrary is misplaced.  The courts in Zelez and Proctor found *instructional errors* coupled with inadequate reasonable doubt definitions unconstitutionally diluted the Government's

(continued...)

7

thus conclude no reasonable likelihood exists that the jurors who determined Defendant's guilt applied the instructions in an unconstitutional manner. See Victor, 511 U.S. at 6.

B.

Defendant next argues the district court improperly allowed the Government to introduce inadmissible substantive evidence under the guise of impeachment. The Government called Mr. Clifton in its case-in-chief. He denied telling DEA agents that Defendant obtained a cellular telephone for Mendoza. The Government subsequently called Agent Tyree to testify. The prosecutor asked Agent Tyree about his conversation with Mr. Clifton. Defendant objected, arguing the testimony constituted inadmissible hearsay, improper impeachment, and its prejudicial effect outweighed its probative value. See Fed. R. Evid. 802, 607, 613, 403. The district court overruled the objection, admitted the evidence under Rule 613, and properly instructed the jury only to consider Agent Tyree's testimony in evaluating Mr. Clifton's credibility and not for the truth of what he may have said to the agents. Agent Tyree then testified Mr. Clifton informed him and Agent West that Defendant purchased a cellular telephone for Mendoza. Defendant claims the district court's improper admission of Agent Tyree's testimony under Rules 613 and 403 violated her Fifth Amendment right to due process. We disagree because

---

[2](...continued)
burden of proof. See Zelez, 901 F.2d at 890; Proctor, 685 A.2d at 740. No such instructional errors existed in Defendant's case and the district court's instruction contained an adequate definition of reasonable doubt.

(*assuming* the district court erred when it admitted Agent Tyree's testimony) the alleged error was harmless.

A non-constitutional error, such as the admission or exclusion of impeachment evidence, is subject to harmless error analysis.[3]  United States v. Mitchell, 113 F.3d 1528, 1532 (10th Cir. 1997).  "[A] non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect."  United States v. Griffin, 389 F.3d 1100, 1104 (10th Cir. 2004).  "We review the record as a whole de novo to evaluate whether the error is harmless, examining the context, timing and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence."  United States v. Magleby, 241 F.3d 1306, 1317 (10th Cir. 2001) (internal quotations omitted).  "[W]here the wrongly admitted evidence was cumulative of other properly admitted evidence, it is less likely to have injuriously influenced the jury's verdict."  Wray v. Johnson, 202 F.3d 515, 526 (2d Cir. 2000).

_____

[3]  At the outset, we reject Defendant's argument that the district court's evidentiary rulings somehow violated the Due Process Clause in this case.  We have consistently reviewed impeachment issues, such as the one Defendant raises here, for an abuse of discretion and not under the de novo standard reserved for, among other things, constitutional questions.  See United States v. Mitchell, 113 F.3d 1528, 1532 (10th Cir. 1997); United States v. Johnson, 977 F.2d 1360, 1381-82 (10th Cir. 1992); United States v. Carter, 973 F.2d 1509, 1513 (10th Cir. 1992); see also United States v. Ince, 21 F.3d 576, 582 (4th Cir. 1994).  Defendant relies solely upon a Sixth Circuit case to argue the contrary.  See United States v. Shoupe, 548 F.2d 636 (6th Cir. 1977).  In Shoupe, however, the Sixth Circuit held the prosecution's recitation of the defendant's entire disavowed, unsworn prior statements in the form of leading questions violated the Fifth Amendment's Due Process Clause.  Id. at 643-44.  The Shoupe decision is therefore distinguishable.

9

In this case, the admission of Agent Tyree's testimony to impeach Mr. Clifton, if error, was harmless. The Government presented overwhelming evidence Defendant knowingly made false material declarations under oath before the grand jury. The Government presented the agents' testimony and Defendant's telephone records to prove she knowingly made false declarations. The agents testified Defendant initially informed them she obtained the 5251-cell phone for Mendoza because he had credit problems. Defendant's telephone records supported the agents' testimony. The records demonstrated Defendant had a cellular telephone with the number 450-2562 (the "2562-cell phone") prior to February 2001. Defendant added the 5251-cell phone to her account in February 2001 and made Mendoza an "authorized user" on that account in September 2001. Thereafter, over 2000 telephone calls were completed *between* the 2562-cell phone and 5251-cell phone. Defendant had the bill for the 5251-cell phone mailed directly to Mendoza's address for several months in 2002.

The records also showed that, at times, *both* the 2562-cell phone and the 5251-cell phone were being used simultaneously to make different telephone calls to different numbers. Additionally, the records revealed the 5251-cell phone called members of Mendoza's family hundreds of times whereas the 2562-cell phone only placed one call to a member of Mendoza's family. Likewise, the 2562-cell phone called Defendant's father hundreds of times whereas the 5251-cell phone only placed two calls to Mr. Clifton. Indeed, Defendant's trial testimony, after the Government confronted her with the

10

telephone records, provided direct evidence that statements she made before the grand jury were false. For example, Defendant testified that in light of the 5251-cell phone records she "must have, you know, let somebody else use the phone[.]"

In short, the Government's testimonial and documentary evidence (and we have only summarized a portion of it) demonstrated, as the jury found, Defendant knowingly made material false declarations to the grand jury regarding Mendoza's use of the 5251-cell phone. The challenged impeachment evidence was cumulative of the Government's other substantive evidence and therefore less likely to have injuriously influenced the jury's verdict. The district court also instructed the jury only to consider Agent Tyree's testimony in assessing Mr. Clifton's credibility. We conclude, under these circumstances, the district court's admission of the impeachment evidence did not have a substantial influence (if any) on the jury's verdict.

## C.

Defendant finally raises two challenges to her sentence. First, Defendant argues the district court clearly erred when it calculated her base offense level under the Guidelines.[4] Second, Defendant argues her sentence violated the Sixth Amendment's

---

[4] The district court calculated Defendant's offense level under the Guidelines as follows: Pursuant to U.S.S.G. § 2J1.3(c)(1), the district court first determined Defendant's false declarations under § 1623 were in respect to "a criminal offense," namely, the distribution of 1.4 kilograms of cocaine base (the "underlying offense"). The court therefore applied § 2X3.1(a) and determined the base offense level for the underlying offense was 30 under § 2D1.1(a)(3) because Defendant played a minimal role
(continued...)

11

jury trial guarantee because the district court found two facts, by a preponderance of the evidence, that increased her sentence roughly threefold. See United States v. Booker, 125 S. Ct. 738 (2005); Blakely v. Washington, 124 S. Ct. 2531 (2004). Defendant specifically claims the district court unconstitutionally found: (1) she knew or should have known at the time of her grand jury testimony the underlying offense involved 1.4 kilograms of cocaine, see U.S.S.G. § 2X3.1; and (2) she willfully obstructed justice. See id. § 3C1.1.

1.

The en banc Court has aptly summarized the Supreme Court's holdings in Blakely and Booker and we need not retread that ground here. See United States v. Gonzalez-Huerta, No. 04-2045, 2005 WL 807008, *1-2 (10th Cir. April 8, 2005) (en banc). Suffice it to say, under the Guidelines, the Sixth Amendment requires: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at

---

[4](...continued)
in the cocaine distribution. The court then subtracted 6 from 30 under § 2X3.1(a), resulting in a base offense level of 24. Finally, the court adjusted Defendant's base offense level downward four levels for her minimal participation in the criminal activity, see U.S.S.G. § 3B1.2(a), and upward two levels for her willful obstruction of justice. See id. § 3C1.1. Defendant thus had a final offense level of 22 and a criminal history category of I, resulting in a sentencing range of 41-51 months. The district court sentenced Defendant at the bottom of the Guidelines range (41 months). We do not express any opinion upon the district court's calculation of Defendant's offense level under § 2J1.3 or the appropriateness of a mitigating role adjustment for Defendant under § 3B1.2(a).

12

756. Also, the remedial opinion in Booker rendered the Guidelines advisory. Id. at 757. A pre-Booker sentencing court could therefore potentially commit two distinct types of error: first, "a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily[;]" and second, "a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." Gonzalez-Huerta, 2005 WL 807008, at *3.

The latter "non-constitutional Booker error" is present in every post-Guidelines, pre-Booker case while the former "constitutional Booker error" is only present in cases where the sentencing court found facts by a preponderance of the evidence that increased the defendant's sentence beyond what the jury verdict or his guilty plea alone would support. A case involving constitutional Booker error, however, will always involve non-constitutional Booker error as well. In such a case, the non-constitutional Booker error may compound the constitutional Booker error. If forfeited, both flavors of Booker error are reviewed under the plain-error test. Gonzalez-Huerta, 2005 WL 807008, at *3 (reviewing a forfeited non-constitutional Booker error for plain error); United States v. Dazey, Nos. 03-6187, 03-6205, 03-6208, 03-6228, 2005 WL 846227, *19 (10th Cir. April 13, 2005) (reviewing a forfeited constitutional Booker error for plain error). As a result, we can only correct an alleged Booker error not raised in the district court if (1) the

13

sentencing court committed an actual error, (2) the error is plain or obvious, (3) the plain error affects substantial rights, and (4) the plain error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Gonzalez-Huerta, 2005 WL 807008, at *3. Non-constitutional and constitutional Booker errors satisfy the first two prongs of the plain-error test. Id.; Dazey, 2005 WL 846227, at *19-20.

Under the third prong, in the context of either non-constitutional or constitutional Booker error, a defendant can carry her burden of proving either error affected substantial rights by demonstrating "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Gonzalez-Huerta, 2005 WL 807008, at *3 (internal quotations omitted); Dazey, 2005 WL 846227, at *20. At least two ways exist in which a defendant can carry her burden under the third prong of the plain-error test. First, non-constitutional *or* constitutional Booker error may affect substantial rights if the defendant shows "a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range." Dazey, 2005 WL 846227, at *20 & n.4 (footnote 5 omitted). For example, a defendant can show a non-constitutional Booker error affected substantial rights with evidence of (1) a disconnect between the § 3553(a) factors and his sentence, and (2) the district court's expressed dissatisfaction with the mandatory Guidelines sentence in his case. United States v. Trujillo-Terrazas, No. 04-2075, 2005 WL 846230, *3-4 (10th Cir. April 13, 2005); see

14

also Gonzalez-Huerta, 2005 WL 807008, at *5 (explaining a defendant can satisfy the third prong of the plain-error test by demonstrating "the sentencing judge expressed unhappiness on the record with the mandatory nature of the Guidelines as it relates to the sentence in that particular case[.]"); Dazey, 2005 WL 846227, at *20 (same). Second, constitutional Booker error may affect substantial rights "if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence[.]" Id.

Finally, under the fourth prong, a defendant must demonstrate the Booker error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Gonzalez-Huerta, 2005 WL 807008, at *7. This is a demanding standard and we apply it rigidly, refusing to notice non-constitutional Booker error unless the error is "particularly egregious" *and* failure to notice the error would result in a "miscarriage of justice." Id. In the case of constitutional Booker error, however, we conduct the analysis "less rigidly." See United States v. James, 257 F.3d 1173, 1182 (10th Cir. 2001). A "less rigid" analysis "means we do not require the *exceptional* showing required to remand a case of non-constitutional error." Dazey, 2005 WL 846227, at *23 (emphasis added).

To date, we have identified three non-exclusive factors to channel the exercise of discretion under the fourth prong when faced with a plain Booker error that affects substantial rights. First, a constitutional Booker error will be more freely noticed.

15

Compare Gonzalez-Huerta, 2005 WL 807008, at *8 (explaining the lack of a Sixth Amendment violation weighed against the exercise of discretion) with Dazey, 2005 WL 846227, at *23 (explaining the existence of a Sixth Amendment violation weighed in favor of the exercise of discretion); see also Gonzalez-Huerta, 2005 WL 807008, at *12 (Ebel, J., concurring in part, dissenting in part) (explaining a constitutional Booker error is much more likely to cast judicial proceedings in disrespect and, therefore, more difficult to uphold). Second, the strength or lack of evidence supporting the defendant's sentence under the Guidelines must be considered. Gonzalez-Huerta, 2005 WL 807008, at *8 (finding the defendant's Guidelines sentence without any mitigating evidence justifying departure from the national norm, as reflected in his Guidelines sentence, weighed against the exercise of discretion); Dazey, 2005 WL 846227, at *23 (finding the defendant's vigorous attack at his sentencing hearing on the judge-found facts that increased his sentence weighed in favor of the exercise of discretion); cf. Cotton, 535 U.S. at 634 (refusing to notice a forfeited constitutional error where overwhelming and uncontroverted evidence supported the defendant's conviction); United States v. Gonzalez Edeza, 359 F.3d 1246, 1251-52 (10th Cir. 2004) (same). Third, we may consider whether the Booker error substantially increased the defendant's sentence. Compare Dazey, 2005 WL 846227, at *23 (finding a substantial increase in the defendant's sentence based upon judge-found facts weighed in favor of the exercise of discretion) with Gonzalez-Huerta, 2005 WL 807008, at *8 (concluding the defendant's

16

Guidelines sentence was not particularly egregious given, among other factors, the lack of record evidence to support a lower sentence).  The third factor is ordinarily not present when a defendant raises non-constitutional <u>Booker</u> error, <u>see</u> <u>id.</u>, but it may be considered in the context of whether the objective consideration of the § 3553(a) factors warrant a departure from the Guidelines sentence in the defendant's case.  <u>See</u> <u>Trujillo-Terrazas</u>, 2005 WL 846230, at *4.

2.

In this case, the district court found two facts by a preponderance of the evidence that Defendant did not admit and the jury verdict alone did not support pursuant to the then-mandatory Guidelines.  The challenged obstruction finding under § 3C1.1 increased Defendant's sentence, but the reasonable-knowledge finding under § 2X3.1 did not.  <u>See</u> <u>United States v. Lang</u>, 364 F.3d 1210, 1220 (10th Cir. 2004), *judgment vacated by* 125 S. Ct. 986 (2005), and *reinstated in relevant part by* 2005 WL 834669, *1 & n.1 (10th Cir. April 12, 2005).  Defendant did not raise her <u>Blakely</u>/<u>Booker</u> argument in the district court.[5]  We thus review Defendant's forfeited <u>Booker</u> error for plain error.

---

[5] Defendant's sentencing hearing occurred prior to the Supreme Court's decisions in <u>Blakely</u> and <u>Booker</u>.  Therefore, Defendant argues we should review her <u>Blakely</u>/<u>Booker</u> challenge de novo because an objection in the district court would have been futile in light of pre-<u>Blakely</u> case law within this Circuit applying <u>Apprendi</u> to preclude only sentences imposed above the statutory maximum provided by the statute of conviction.  The en banc Court rejected this line of reasoning, so we must do the same. <u>Gonzalez-Huerta</u>, 2005 WL 807008, at *5, 7 (rejecting the argument that an intervening Supreme Court decision which alters well-settled law precludes plain-error review).

The district court's mandatory application of the Guidelines to enhance Defendant's sentence is clear or obvious error under current law. The Booker error also affected Defendant's substantial rights. She demonstrated a reasonable probability exists that, but for the Booker error, the result of her sentencing proceeding would have been different. The district judge stated, while calculating Defendant's base offense level under § 2J1.3(c)(1), that "if I had more discretion, I would impose a lower sentence." The district judge apparently believed Defendant's offense level of 22 (and corresponding sentencing range of 41-51 months) was too harsh in her case and that he would have liked to sentence her at an offense level of 12 (with a corresponding sentencing range of 10-16 months) under § 2J1.3(a). Further, the district court sentenced Defendant at the bottom of the Guidelines range notwithstanding his comment that he typically reserves the low end of the Guidelines range for defendants who plead guilty. In sum, the district court believed the Guidelines sentence in Defendant's case did not adequately reflect the nature and circumstances of her perjury offense. See 18 U.S.C. § 3553(a)(1). Defendant has thus demonstrated a reasonable probability exists the district judge would impose a sentence outside the Guidelines range under the specific facts of her case.

Finally, we notice Defendant's forfeited Booker error. The error is egregious in this case because of the lack of evidence to support the *entire sentence* the Guidelines required the district court to impose. To be sure, overwhelming evidence exists in the record to support Defendant's perjury *conviction* and, by necessary implication, the

18

district court's obstruction finding under § 3C1.1. But the Guidelines required the district court to impose more punishment than required for simple perjury. Because Defendant obtained a cellular telephone for a drug dealer, and then lied to the grand jury about doing so, the mechanistic Guidelines required the district court to sentence Defendant as an "accessory after the fact" to the distribution of cocaine. U.S.S.G. §§ 2J1.3(c)(1), 2X3.1(a).

The Government candidly admitted at trial, however, that it did not have *any* evidence of Defendant's involvement in drug trafficking whatsoever and no evidence in the record indicates Defendant knew Beal or Mendoza were involved in drug trafficking. To sentence Defendant as an accessory when no evidence exists that she knowingly aided the principals (Mendoza and Beal) in avoiding the consequences of distributing cocaine offends traditional notions of fairness.[6] See, e.g., Skelly v. United States, 76 F.2d 483,

---

[6] At the grand jury proceedings, the Government informed Defendant the grand jury was investigating "crack cocaine trafficking in Albuquerque." The Government did not, however, inform Defendant about the scope of the investigation (i.e., the quantity of drugs under investigation). The dissent acknowledges that application of § 2J1.3(c)(1) to a drug trafficking offense may be "unfair" when the perjurer only knows the grand jury is investigating a drug offense and does not have any knowledge of the quantity of drugs under investigation. (Dissent op. at 4-5). The dissent seeks to avoid this "problematic" aspect of the case by relying upon facts the district judge found *by a preponderance of the evidence*; namely, that Defendant knew the underlying offense involved 1.4 kilograms of cocaine. (Id. at 4). The dissent finds solace in its position because "the Sentencing Commission could reasonably and properly decide that for purposes of punishing perjury the knowledge requirement should be relaxed." We part ways with the dissent's analytical approach for two reasons. First, the approach reflects a pre-Booker outlook of the sentencing framework by relying upon a now incorrect view of the Sentencing

(continued...)

19

487 (10th Cir. 1935) (explaining that, at common law, an accessory after the fact is one who, *knowing* a felony to have been committed by another, receives, relieves, comforts, or assists the felon in order to hinder the felon's apprehension, trial, or punishment). The district court nevertheless felt constrained under the then-mandatory Guidelines to sentence Defendant as an accessory notwithstanding the dearth of evidence to support her classification as one. Thus, a strong disconnect exists in this case between the sentence imposed and Defendant's "real conduct." And an objective consideration of the § 3553(a) factors leads inescapably to the conclusion that the mandatory Guidelines *sentence* does not reflect the seriousness of the *offense* in this case. See 18 U.S.C. § 3553(a)(2)(A); see also Trujillo-Terrazas, 2005 WL 846230, at *4 (explaining that to allow a potential "mismatch between the sentence suggested by a principled application of the post-Booker sentencing framework and the actual sentence given to [the defendant] would call into question the fairness, integrity, and public reputation of judicial proceedings.").

---

[6](...continued)
Commission vis-à-vis the sentencing court. Second, and somewhat relatedly, the dissent's reliance upon facts found by a district judge under a preponderance of the evidence standard to uphold an erroneous sentence that affects substantial rights produces the anomalous result of affirming a sentence based upon an unconstitutional procedure. The dissent's analytical error is compounded where, as here, Defendant "vigorously contested the judge-found facts that enhanced h[er] sentence." Dazey, 2005 WL 846227, at *23.

Moreover, we cannot ignore that the district court in this case would likely impose a significantly lighter sentence on remand. Gonzalez-Huerta, 2005 WL 807008, at *13 & n.4 (Ebel, J., concurring in part, dissenting in part). "A review of federal appellate decisions considering whether to correct unobjected-to sentencing errors reveals that the key concern has been whether correct application of the sentencing laws would likely significantly reduce the length of the sentence." United States v. Brown, 316 F.3d 1151, 1161 (10th Cir. 2003). On this record, therefore, we conclude the Guidelines process failed, Gonzalez-Huerta, 2005 WL 807008, at *16 (Hartz, J., concurring), and to leave standing this Booker error would result in a miscarriage of justice. Given our resolution of this case, we need not address Defendant's arguments that (1) the Booker error constitutes structural error, or (2) she did not receive adequate pretrial notice of her potential sentence in violation of the Due Process Clause.

III.

We AFFIRM the jury's verdict that Defendant perjured herself in violation of 18 U.S.C. § 1623 and REMAND with instructions for the district court to vacate Defendant's sentence and resentence her in light of United States v. Booker, 125 S. Ct. 738 (2005). The mandate shall issue forthwith.

21

04-2046, *United States v. Clifton*

**HARTZ**, Circuit Judge, concurring in part and dissenting in part:

I join fully in parts I, II A, and II B of Judge Baldock's opinion. With regard to the impeachment issue discussed in part II B, I write separately to raise a question about an issue we did not need to address in resolving this appeal although it was briefed by the parties. I respectfully dissent on the *Booker* issue.

## I.      Impeachment

Defendant complains about the admission into evidence of an out-of-court statement by her father, Mr. Clifton, in which he allegedly said that Defendant had told him that she had bought a cell phone for Jaime Mendoza. The ground for admission was that it impeached contrary testimony by Mr. Clifton during direct examination by the government. Defendant argues that the government's primary purpose in introducing evidence of the prior statement was not to impeach Mr. Clifton—that is, to convince the jury that he was not credible—but to use the prior statement as substantive evidence—that is, to persuade the jury that Defendant had in fact purchased the cell phone for Mr. Mendoza, thereby establishing her perjury. The prior statement was not admissible as substantive evidence because it was hearsay. *See* Fed. R. Evid. 801(c), (d)(1)(A). Defendant relies, quite properly, on a line of Tenth Circuit cases including *United States v. Peterman*, 841 F.2d 1474 (10th Cir. 1988), for the proposition that it would be improper for the prosecution to proffer the prior inconsistent statement if the prosecution was

"introduc[ing] evidence under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible." *Id*. at 1479 (internal quotation marks omitted). Our circuit has not been alone in this view. *See, e.g.*, *United States v. Zackson*, 12 F.3d 1178, 1184 (2d Cir. 1993); *United States v. Miller*, 664 F.2d 94, 97 (5th Cir. 1981); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984).

The *Peterman* rule strikes me as passing strange. Why should the admissibility of evidence depend on the state of mind of the attorney proffering the evidence? To be sure, the prosecutor's motive plays a limited role in some legal issues: Racially motivated peremptory jury challenges are prohibited, *see Batson v. Kentucky*, 476 U.S. 79 (1986), and a defendant cannot be retried after a mistrial caused by prosecutorial misconduct *intended* to force a mistrial, *see Oregon v. Kennedy*, 456 U.S. 667 (1982). But it is hard to find support in the Federal Rules of Evidence for considering attorney intent as a factor in determining admissibility. Instead, as one would expect, we look at factors relating to the probative and unfairly prejudicial impact of the evidence. Of course, the more such prejudicial impact exceeds the probative value, the greater the likelihood that the prosecutor's motive in proffering the evidence was impure. But when the unfairly prejudicial impact substantially predominates, we should not admit the evidence just because the prosecutor's thoughts are pure, nor should we exclude evidence on the ground of prosecutorial obliquity when the probative value is not substantially outweighed by the

-2-

danger of unfair prejudice.  There is significant authority for my view.  *See United States v. Ince*, 21 F.3d 576, 580 (4th Cir. 1994) ("Federal evidence law does *not* ask the judge . . . to crawl inside the prosecutor's head to divine his or her true motivation."); *United States v. Buffalo*, 358 F.3d 519 (8th Cir. 2004); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 607.02 [2][b] (2d ed. 2004); 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure:  Evidence* § 6093 (1990) (recommending Rule 403 approach to propriety of admitting impeachment evidence, although suggesting that it may be useful to incorporate Rule 403 explicitly in Rule 607). I trust that we will have occasion to revisit this issue.

## II.    *Booker* Issue

Perjury is always a serious crime.  But not all perjury is equally serious.  I think almost everyone would agree that perjury to thwart a shoplifting investigation is not as serious as perjury to thwart a murder investigation.

To incorporate this proposition in the calculation of the proper punishment for perjury, the Sentencing Guidelines provide that "[i]f the offense involved perjury . . . in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above." USSG § 2J1.3(c)(1).  Thus, when perjury occurs before a grand jury investigating an offense, the perjurer will be treated as an accessory after the fact to the offense if that treatment increases the offense level for the perjury.  To be sure, the perjurer may not be,

strictly speaking, an accessory after the fact, because an accessory after the fact must "know[] that [the] offense against the United States has been committed." 18 U.S.C. § 3. But the Sentencing Commission could reasonably and properly decide that for purposes of punishing perjury the knowledge requirement should be relaxed. After all, perjury during the investigation of a criminal offense undoubtedly "assists the offender in order to hinder or prevent his . . . trial or punishment." *Id.*

In this case the guidelines treated Defendant as if she were an accessory after the fact to the crime of distributing 1.4 kilograms of cocaine base. The panel opinion proclaims this as unfair in part because the government "did not have *any* evidence of [her] involvement in drug trafficking whatsoever." Op. at 19. It seems to me, however, that her participation in trafficking is irrelevant. Indeed, one who participates in an offense cannot also be an accessory after the fact to that offense. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 13.6(a), at 402-03 (2d ed. 2003).

What *is* relevant is that the perjurer know the severity of the crime being investigated by the grand jury. In this regard, drug offenses may be problematic because the offense's severity depends on the quantity of drugs involved. If all that the perjurer knew when testifying is that the grand jury was investigating a drug offense, it may well be unfair to sentence the perjurer on the basis that the drug offense was a major narcotics conspiracy rather than a street transaction.

But that is not a problem here. When Defendant first appeared before the grand jury, she was informed that "[t]he criminal investigation that is being considered as we speak is a drug trafficking investigation involving crack cocaine trafficking in Albuquerque." II. App. at 303. At her sentencing hearing both DEA agents testified that when they originally interviewed Defendant they told her they were investigating the source of about four pounds (actually three) of crack cocaine whose seizure had been reported by the media. Although Defendant challenged the agents' testimony, the sentencing judge found that she knew or should have known that the investigation concerned one to four kilograms of crack cocaine.

In my view this case does not present a breakdown of the guideline system. Reasonable people may differ regarding the appropriate sentence in this case. The sentencing judge himself expressed a desire to impose a lighter sentence. But there is not in this case, as there was in *United States v. Trujillo-Terrazas*, No. 04-2075, slip op. (10th Cir. Apr. 13, 2005), a peculiarity not accounted for in the guidelines. Accordingly, in applying the fourth prong of the plain-error test, *see United States v. Gonzalez-Huerta*, No. 04-2045, slip. op. (10th Cir. Apr. 8, 2005); *id*. (Hartz, J., concurring), I see no purpose served by a remand for resentencing except to accommodate the personal predilections of the sentencing judge.

I would affirm the sentence.