UNITED STATES of America,
Plaintiff–Appellee,

v.

Brent BENNETT, Defendant–
Appellant.

No. 04–4043.

United States Court of Appeals,
Tenth Circuit.

July 28, 2005.

Michael S. Lee, Salt Lake City, UT, for Plaintiff–Appellee.

Deirdre A. Gorman, Ogden, UT, for Defendant–Appellant.

Before KELLY, O'BRIEN, and TYMKOVICH, Circuit Judges.

## ORDER AND JUDGMENT*

TERRENCE L. O'BRIEN, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Brent Bennett appeals his sentence imposed for being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) [1] on the ground, *inter alia,* it violates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[2] Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we

---

* This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. 18 U.S.C. § 922(g)(3) provides in pertinent part as follows: "It shall be unlawful for any person ... who is an unlawful user of ... any controlled substance ... to ... possess in or affecting [interstate] commerce, any firearm...." 18 U.S.C. § 924(a)(2) provides in pertinent part: "Whoever knowingly violates subsection ... (g) ... of section 922 shall be ... imprisoned not more than 10 years...."

2. In *Blakely,* the Court applied its decision in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120

S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") to invalidate Washington's sentencing guidelines under the Sixth Amendment. In *Blakely,* the sentencing court enhanced a standard sentence under these guidelines. The facts necessary to support the enhancement were neither admitted by the defendant nor proven to a jury beyond a reasonable doubt. Even though the enhanced sentence did not exceed the statutory ceiling of imprisonment for the offense, the Court invalidated it. *Blakely,* 124 S.Ct. at 2538. In doing so, the Court clarified that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely

VACATE Bennett's sentence and RE-MAND for resentencing.

## I. BACKGROUND

On June 11, 2003, a search warrant was executed at Bennett's residence located at 1618 West Shelly Avenue in West Valley City, Utah, as a result of two controlled purchases of methamphetamine by a confidential informant from Carol L. Higgins, also a resident at the address. The affidavit for search warrant contained no indication there were firearms present on the premises or used in connection with the methamphetamine transactions. While Higgins was in the residence at the commencement of the search, Bennett was not. He arrived at the location shortly thereafter. Law enforcement found .47 grams of methamphetamine on Bennett's person when he arrived home. A total of 10.2 grams of methamphetamine was found in Higgins' possession. Bennett stated he and Higgins sold methamphetamine from the residence to friends in order to support their own drug habits. Law enforcement found drug paraphernalia in the residence consistent with drug trafficking.

During the search, law enforcement also located ten unloaded firearms in a locked gun cabinet in the living room of Bennett's residence. Ammunition was discovered in a separate enclosure of the gun cabinet that had its own lock.[3] Bennett stated he was an avid hunter and admitted to ownership of eight of the firearms.[4] The eight firearms Bennett admitted to owning, none of them handguns, were: 1) a Winchester shotgun, 2) a Winchester 30–30 rifle, 3) a Springfield Arms .22 rifle, 4) an Interarms .22 rifle, 5) an Interarms 30–06 rifle, 6) a Stevens .22 rifle, and 7) two Remington 12 gauge shotguns.

Bennett was indicted for being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) (Count 1) and for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 2). On November 18, 2003, he plead guilty to Count 1 and an information charging him with misdemeanor possession of methamphetamine in violation of 21 U.S.C. § 844(a). A presentence report (PSR) was prepared. Bennett claimed the firearms he owned were used strictly for hunting. He also produced copies of numerous hunting permits and licenses issued to him by the State of Utah, photographs of his hunting gear and equipment and affidavits from several individuals attesting to his keen interest in hunting and wildlife.

The PSR calculated a base offense level of 14. *See* USSG § 2K2.1(a)(6)(A) (base offense level of 14 if defendant was a prohibited person).[5] It enhanced four levels because the offense involved 8–24 firearms. *See* USSG § 2K2.1(b)(1)(B). It also enhanced four levels because Bennett used or possessed the firearms in connection with another felony offense (distribution of methamphetamine). *See* USSG § 2K2.1(b)(5). The combined offense level

---

on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537 (quotation marks and emphasis omitted).

3. The record is unclear whether or not the enclosure of the cabinet where the ammunition was found was locked prior to its discovery.

4. The remaining two firearms belonged to Higgins; she had inherited them from her father. They played no part in the district court's sentencing determination.

5. The PSR and the court applied the November 2002 edition of the United States Sentencing Commission *Guidelines Manual*. Unless otherwise noted, all references are to the 2002 edition of the guidelines.

was 22.[6] The PSR recommended a three-level downward adjustment for acceptance of responsibility, *see* USSG § 3E1.1, resulting in a total offense level of 19. With a criminal history category of I, Bennett faced a guideline range of 30 to 37 months imprisonment.

Bennett objected to the application of USSG § 2K2.1(b)(5) on the ground he did not possess the firearms in connection with drug trafficking out of his residence.[7] Furthermore, he entreated the court to apply USSG § 2K2.1(b)(2) ("If the defendant ... possessed all ... firearms solely for lawful sporting purposes ..., and did not unlawfully discharge or otherwise unlawfully use such firearms ..., decrease the offense level determined above to level 6."). Without the USSG § 2K2.1(b)(5) enhancement and applying USSG § 2K2.1(b)(2), Bennett would have had a combined offense level of 8,[8] which, with a three level downward adjustment for acceptance of responsibility under USSG § 3E1.1 and a criminal history category of I, would have resulted in a total offense level of 5, exposing him to a sentencing range of 0 to 6 months imprisonment.

At Bennett's sentencing on March 1, 2004,[9] the district court found the facts necessary to support application of USSG § 2K2.1(b)(5), declined to apply USSG § 2K2.1(b)(2), adhered to the PSR's recommendations and sentenced Bennett to 30 months imprisonment, the bottom of the guideline range. On appeal, Bennett contends the court erred in applying USSG § 2K2.1(b)(5) and in failing to apply USSG § 2K2.1(b)(2). He also contends the court violated *Blakely* in sentencing him under a mandatory guideline system in which it found the facts necessary to support the four level enhancement under § 2K2.1(b)(5) by a preponderance of the evidence. Inasmuch as the *Blakely* issue is dispositive, we do not reach Bennett's guideline challenges.

## II. DISCUSSION

After briefing was concluded, the Supreme Court decided *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in which it extended its ruling in *Blakely* to invalidate the federal sentencing guidelines insofar as they were mandatory. 125 S.Ct. at 746. We apply both *Blakely* and *Booker* to this appeal. *See United States v. Clifton*, 406 F.3d 1173, 1175 n. 1 (10th Cir.2005) ("We must apply the holdings in *Blakely* and *Booker* to all cases in which a defendant

---

**6.** The PSR also calculated an adjusted offense level of 4 for Bennett's conviction for possession of methamphetamine in violation of 21 U.S.C. § 844(a). *See* USSG § 2D2.1(a)(3). Under the guidelines' provisions for grouping of multiple counts, however, this calculation had no effect on the combined offense level. *See* USSG § 3D1.4(c). The combined offense level was determined solely by the adjusted offense level of 22 calculated under USSG § 2K2.1 for Bennett's conviction for being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3).

**7.** Bennett also argued the Government failed to establish temporal proximity between his admitted distribution of methamphetamine out of his residence and his possession of the firearms. The court was not convinced.

**8.** Under the guidelines' provisions for grouping of multiple counts, Bennett's adjusted offense level of 6 for being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) would have been increased two offense levels on account of his conviction for possession of methamphetamine in violation of 21 U.S.C. § 844(a), for which he had an adjusted offense level of 4, resulting in a combined offense level of 8. *See* USSG § 3D1.4(a).

**9.** The Supreme Court decided *Blakely* on June 24, 2004, after Bennett's sentence was imposed.

properly raised an issue under either case."). In *Booker*, the Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 756. The Court concluded the guidelines would not offend the Constitution if advisory only. *Id.* at 749–50. To this end, in the remedial portion of its opinion, the Court excised those provisions mandating application of the guidelines. *Id.* at 756–57. The Court indicated its decision was applicable to all cases, like this one, on direct review. *Id.* at 769.

> Applying *Booker*, we have stated:
>
> there are two distinct types of error that a court sentencing prior to *Booker* could make. First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily. As *Booker* makes clear, the Sixth Amendment prohibits this practice. As a matter of convenience, we will refer to such an error as a constitutional *Booker* error. Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction. While this type of sentence does not violate the Sixth Amendment, such a sentence is nonetheless impermissible because the Court severed the portion of the Sentencing Reform Act that required the mandatory application of the Guidelines. We will refer to this second type of error as a non-constitutional *Booker* error.

*United States v. Gonzalez–Huerta*, 403 F.3d 727, 731–32 (10th Cir.2005) (en banc) (internal quotation marks and citations omitted). Irrespective of the type of error involved, *Booker* does not necessitate a remand for resentencing in all instances. Instead, "reviewing courts [are] to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the plain-error test." *Booker*, 125 S.Ct. at 769 (internal quotation marks omitted).

■ Without doubt, the district court committed constitutional *Booker* error when it found the facts necessary to support the USSG § 2K2.1(b)(5) enhancement to Bennett's sentence. In particular, the court found Bennett used or possessed his firearms in connection with the sale of methamphetamine out of his residence. However, since the error was not preserved below, we review only for plain error.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez–Huerta*, 403 F.3d at 732 (internal quotation marks omitted). "We conduct this analysis less rigidly when reviewing a potential constitutional error." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir.2005) (internal quotation marks omitted). On the other hand, we enjoy discretion to notice plain error. *See* Fed. R.Crim.P. 52(b). In this case, there is no doubt the error is plain, and as a result, the first two prongs of the plain error test are satisfied. *See Clifton*, 406 F.3d at 1181 ("Non-constitutional and constitutional *Booker* errors satisfy the first two prongs of the plain-error test."). We thus limit our review to the third and, if necessary, the fourth prong of the plain error test.

"Satisfying the third prong of plain-error review—that the error affects substantial rights—usually means that the error must have affected the outcome of the district court proceedings." *Gonzalez–Huerta*, 403 F.3d at 732 (internal quotation marks omitted). It is the defendant's burden to make this showing, even in a case of alleged constitutional error. *Id.* at 733. "To meet this burden, the appellant must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

In a case of constitutional *Booker* error, there are at least two ways a defendant can make this showing. First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights. This inquiry requires the appellate court to review the evidence submitted at the sentencing hearing and the factual basis for any objection the defendant may have made to the facts on which the sentence was predicated. Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range.

*Dazey*, 403 F.3d at 1175 (footnotes omitted).

██ We first inquire whether there is a reasonable probability a jury, applying a beyond a reasonable doubt standard, would not have found, as did the court applying a preponderance of the evidence standard, that Bennett used or possessed his firearms in connection with another felony. In other words, we inquire whether there is a reasonable probability a jury would have accepted Bennett's argument that he possessed the firearms solely for lawful sporting purposes and, as a consequence, did not use or possess them for unlawful purposes. We believe Bennett has met this standard.

"[W]e have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate." *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir.1998). *Bunner* involved the possession of a loaded handgun. We observed that "[h]andguns are widely recognized as a tool of the drug dealers trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)." *Id.* (citation omitted). In *United States v. Walters*, another case involving possession of a loaded handgun, we observed that "the 'in connection with' requirement of § 2K2.1(b)(5) is ... satisfied if the government shows that the weapon facilitates or has the potential to facilitate the offense, but is not satisfied if the weapon's possession is coincidental or entirely unrelated to the offense." 269 F.3d 1207, 1219 (10th Cir.2001) (internal quotation marks and ellipsis omitted).

Applying a preponderance of the evidence standard, the district court found the required spatial and temporal proximity between the firearms and Bennett's drug trafficking:

[I]t is a close question, but it seems to me that the fact that the guns were found right by the room where the drugs were being dealt, and apparently some drugs had been dealt out of there a couple of days before the police came,

would be enough to show there is a physical proximity and a temporal proximity to drug dealing and that would be enough for the enhancement.

(R. Vol. III at 5.) While conceding the evidence was capable of being viewed otherwise ("Now admittedly these are long-barreled guns under lock and key and those cut against the inference that they were used in connection with the drug deal . . . ."), the court concluded the evidence was "enough to show [Bennett] was dealing drugs and the guns are sitting right there and [have the] potential to embolden his drug selling activities." (*Id.* at 17, 19.)

As the court conceded, the evidence was capable of supporting a conclusion opposite to its own. We agree. In our view, the evidence Bennett submitted was substantial and leads us to conclude there is a reasonable probability a jury, if presented with the question and asked to resolve it beyond a reasonable doubt, would conclude Bennett's possession of the firearms was "coincidental or entirely unrelated to the [drug trafficking] offense." *Id.* at 1219. We are particularly persuaded by the fact the firearms were of a kind intended for hunting, Bennett produced extensive evidence of his lawful hunting activities, the firearms were not loaded, they were in a locked cabinet, and the ammunition was in a separate enclosure of the cabinet that had its own lock. We therefore conclude Bennett has met his burden of showing the constitutional *Booker* error at sentencing affected his substantial rights.

▮ Next, we consider whether we ought to notice the plain error. In so doing, we must determine whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings[,]" *Gonzalez–Huerta,* 403 F.3d at 732 (internal quotation marks omitted), i.e. the fourth prong of the plain error test. As with the third prong of plain error review, Bennett bears the burden of demonstrat-

ing he is entitled to relief under the fourth prong. *Dazey,* 403 F.3d at 1178.

Evidence that would tend to support an exercise of our discretion under this standard might include, for example: (a) a sentence increased substantially based on a *Booker* error; (b) a showing that the district court would likely impose a significantly lighter sentence on remand; (c) a substantial lack of evidence to support the entire sentence the Guidelines required the district court to impose; (d) a showing that objective consideration of the § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines; or (e) other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process.

*United States v. Dowlin,* 408 F.3d 647, 671 (10th Cir.2005) (citations omitted). Without the *Booker* error, Bennett might not have been imprisoned at all. With the error, he was imprisoned for 30 months. Although we do not need to reach the question, we harbor doubt that the record contains evidence sufficient to support a finding, even under a preponderance standard, that Bennett possessed the firearms in connection with another felony offense. Furthermore, the district court sentenced at the low end of the guideline range it applied. With the foregoing in mind, we conclude a failure to notice the plain error in this case would impugn the fairness, integrity and public reputation of judicial proceedings.

## III. CONCLUSION

Accordingly, we remand the matter to the District Court with instructions to VACATE Bennett's sentence imposed in this case and resentence the defendant in accordance with *Booker.*