[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 8, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-14365

_____

D.C. Docket No. 03-00043-CR-N-1

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

JERRY JOSEPH HIGDON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

ON PETITION FOR REHEARING EN BANC

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and
PRYOR, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

/s/ J. L. Edmondson
_____
CHIEF JUDGE

HULL, Circuit Judge, concurring in the denial of rehearing en banc, in which ANDERSON and CARNES, Circuit Judges, join:

In this case, Jerry Joseph Higdon, Jr. appealed his convictions and sentences for: (1) two counts of distribution of "ice" methamphetamine, and one count of possession with intent to distribute "ice" methamphetamine, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (2) a drive-by shooting, in violation of 18 U.S.C. § 36(b).  The defendant's lengthy sentence was, in large part, the product of receiving consecutive sentences for each of his drug and drive-by-shooting convictions.  See U.S.S.G. § 5G1.2(d).[1]

At no time in the district court or in his initial brief on appeal did Higdon challenge the constitutionality of any extra-verdict sentencing enhancement or assert that the district court lacked the authority to impose the enhancements under a preponderance-of-the-evidence standard.  Instead, approximately three months after briefing was completed in the case, Higdon filed a motion to file a supplemental brief raising a Blakely issue.

This Court has repeatedly followed the prudential rule that new issues not raised in opening briefs will not be considered by the court.  See e.g., United States v. Sears, –F.3d –, 2005 WL 1334892, at *1 (11th Cir. June 8, 2005); United

---

[1]The district court sentenced Higdon to 480 months as to each of the three drug counts and 300 months on the drive-by shooting, with each term consecutive to each other.

States v. Verbitskaya, 406 F.3d 1324, 1339-40 (11th Cir. 2005); United States v. Day, 405 F.3d 1293, 1294 n.1 (11th Cir. 2005); United States v. Dockery, 401 F.3d 1261 (11th Cir. 2005); United States v. Ardley, 273 F.3d 991, 991-95 (11th Cir. 2001) (Carnes, J., concurring in the denial of rehearing en banc) (collecting cases); United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000).[2]  Thus, this Court, consistent with this rule, denied Higdon's motion and refused to consider his belated attempt to raise a Blakely issue in supplemental briefing.[3]  Unhappy with this Court's prior decisions, the dissent criticizes this Court's application of its well-established prudential rule to cases involving United States v. Booker, 125 S. Ct. 738 (2005).

---

[2]In Nealy, this Court explained this rule, as follows:
Parties must submit all issues on appeal in their initial briefs.  When new authority arises after a brief is filed, this circuit permits parties to submit supplemental authority on "intervening decisions or new developments" regarding issues already properly raised in the initial briefs.  Also, parties can seek permission of the court to file supplemental briefs on this new authority.  But parties cannot properly raise new issues at supplemental briefing, even if the issues arise based on the intervening decisions or new developments cited in the supplemental authority.
Nealy, 232 F.3d at 830 (internal citations omitted).

[3]Although this Court does not consider Booker-type issues not raised in any way in a party's initial brief, we have liberally construed what it means to raise a Booker-type issue.  See United States v. Dowling, 403 F.3d 1242, 1246 (11th Cir. 2005) (evaluating whether a Blakely/Booker claim was made by reviewing whether a defendant: (1) referred to the Sixth Amendment; (2) referred to Apprendi or another related case; (3) asserted his right to have the jury decide the disputed fact; or (4) raised a challenge to the role of the judge as factfinder with respect to sentencing factors).  This is consistent with how we have applied our prudential rule in other contexts and "liberally read briefs to ascertain the issues raised on appeal."  See United States v. Smith, 402 F.3d 1303, 1309-10 (11th Cir. 2005) (quoting United States v. Starke, 62 F.3d 1374, 1379 (11th Cir. 1995)).

4

As in Sears, Verbitskaya, Day, Dockery, Ardley, and others, this Court properly denied Higdon's motion to file a supplemental brief raising a Blakely (now Booker) claim based on our circuit's long-standing rule that issues not raised in a party's initial brief will not be considered. This Court's prudential rules apply evenly to all appellants, whether the government or the defendant. Moreover, the requirement that issues be raised in opening briefs "serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them. See generally Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir. 1988)." United States v. Ardley, 273 F.3d at 991 (Carnes, J., concurring in the denial of rehearing en banc).

Retroactivity Under Griffith v. Kentucky

The dissent's main argument is that, under Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987), this Court is required to allow all defendants to raise, for the first time, a Booker-type issue at any point in the direct appeal process, regardless of whether the issue was in the defendant's initial brief on appeal. It is the dissent's apparent belief that retroactivity rules always trump any prudential rule. I submit that nothing in Griffith, or any other Supreme Court decision, requires (or even suggests) this result.

In Griffith, the defendant timely raised the error in issue at trial and the

5

appellate level, and in that context the United States Supreme Court concluded

that "a new rule for the conduct of criminal prosecutions is to be applied

retroactively to all cases . . . pending on direct review or not yet final . . . ."

Griffith, 479 U.S. at 328, 107 S. Ct. at 716. "The Griffith holding, however,

applies only to defendants who preserved their objections throughout the trial and

appeals process." Verbitskaya, 406 F.3d at 1340 n.18 (citing Griffith, 479 U.S. at

316-20, 107 S. Ct. at 709-11).[4]

It is clear that Supreme Court precedent does not mandate that rules of

retroactivity trump all procedural rules. Indeed, Supreme Court case law clearly

indicates that rules of retroactivity *are subject* to procedural rules. For example, in

Shea v. Louisiana, 470 U.S. 51, 58 n.4, 105 S. Ct. 1065, 1069 n.4 (1985), the

Supreme Court stated that "[a]s we hold, if a case was pending on direct review at

the time Edwards [v. Arizona, 451 U.S. 477, 101 S. Ct. 1880 (1981)] was decided,

the appellate court must give retroactive effect to Edwards, subject, of course, to

established principles of waiver, harmless error, and the like."

Similarly, as discussed later, in Booker itself, the Supreme Court stated that

---

[4]Further, the Griffith Court did not require that a dissimilarly situated defendant – one who did not preserve his objection below or on appeal – would somehow benefit from a new constitutional rule. Rather, Griffith concluded that retroactive application of new rules on direct appeal was necessary in order to "treat[] similar situated defendants the same." Griffith, 479 U.S. at 323, 107 S. Ct. at 713. Defendants who have not preserved a claim of error are not similarly situated to those who have.

although courts are to apply its holding to cases on direct review, "we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." Booker, 125 S. Ct. at 769. Booker clearly implied that "plain error" (which applies to issues not raised in the trial court) is only one of a number of prudential doctrines; the rule that issues not timely raised on appeal are waived or abandoned is certainly another.

Thus, there are two rules at issue in this case: (1) retroactivity; and (2) this Court's prudential rule that issues not raised in the opening brief are waived. These rules, although equally important, play distinct and separate roles. As we explained in Ardley,

> [r]etroactivity doctrine answers the question of which cases a new decision applies to, assuming that the issue involving that new decision has been timely raised and preserved. Procedural bar doctrine answers the question of whether an issue was timely raised and preserved, and if not, whether it should be decided anyway.

Ardley, 273 F.3d at 992 (Carnes, J., concurring in the denial of rehearing en banc).

The fact remains that our Court has elected to apply its prudential default rules in a uniform manner. It is the uniform application of this Court's procedural default rules that provides a clear, intelligent rule for litigants to follow: raise the issue in your initial brief or risk procedural bar. The dissent is able to point to

7

nothing, other than personal preference, that warrants a different application of this Court's prudential rules.[5]

Orderly Administration of Justice

The dissent also asserts that the application of this Court's prudential rules unnecessarily invites litigants to raise non-meritorious issues on the slim chance the Supreme Court might reverse course on some line of precedent while their direct appeal is pending. Of course, precisely the same argument can be made against every procedural bar. Adopting the dissent's rationale would make all procedural bar rules unenforceable. In any event, the dissent's catastrophic

---

[5]The dissent emphasizes that Rule 52(b) provides that plain error that affects substantial rights may be considered even though it was not brought to the court's attention. See Fed. R. Crim. P. 52(b). The dissent argues that the Ardley/Levy rule thus has the effect of repealing Rule 52(b) because the Ardley/Levy rule allows for no exceptions. This is incorrect. For example, our Court has addressed claims of Booker error although they were not raised in the defendant's opening brief where the government has conceded the error. See United States v. Dacus, 408 F.3d 686, 687 (11th Cir. 2005) ("Although we ordinarily refuse to consider an argument not raised in an initial brief, we consider the argument that Dacus's sentence was erroneous under Booker because both parties have joined the issue without objection." (internal citation omitted)). Moreover, if a defendant timely raises a Sixth Amendment or Blakely issue in the opening brief, as many defendants did even prior to Booker, this Court has routinely applied plain error review under Rule 52(b). See e.g., United States v. Burge, 407 F.3d 1183 (11th Cir. 2005); United States v. Martinez, 407 F.3d 1170 (11th Cir. 2005); United States v. Orduno-Mireles, 405 F.3d 960 (11th Cir. 2005); United States v. Camacho-Ibarquen, 404 F.3d 1283 (11th Cir. 2005); United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005).

The question is not whether an appellate court still has the power to consider issues not raised in the initial brief – of course it does. The question is whether this Court must consider Booker issues defaulted in the district court (triggering plain-error review if raised in the opening brief on appeal) and then defaulted again in the appellate court by not being timely raised there. This Court has determined that no manifest injustice results if it declines to consider untimely Booker claims on appeal.

predictions regarding the orderly administration of justice have simply failed to materialize. It has been nearly four years since the Ardley decision was released, and we have not seen appellants raise a host of non-meritorious issues.[6]

Further, this Court's prudential rules do not result in any manifest injustice. Criminal defense attorneys were well aware of Apprendi's potential impact on the sentencing guidelines even after our Sanchez decision, and before the Supreme Court's decisions in Blakely and Booker. In fact, in United States v. Reese, 382 F.3d 1308, 1309 (11th Cir. 2004), United States v. Petrie, 302 F.3d 1280, 1289-90 (11th Cir. 2002), cert. denied, 538 U.S. 971, 123 S. Ct. 1775 (2003), United States v. Snyder, 291 F.3d 1291, 1294 n.3 (11th Cir. 2002), and United States v. Rodriguez, 279 F.3d 947, 950 n.2 (11th Cir. 2002), defense counsel asserted before both the district court and this Court that their client's rights to a jury trial were violated when the district court enhanced their sentences with extra-verdict enhancements not proved to a jury beyond a reasonable doubt. These Apprendi-type arguments about federal sentencing enhancements were made in those cases before Blakely and despite adverse precedent in Sanchez.

---

[6]The long laundry list of objections predicted by the dissent in Ardley has not materialized in the trial courts because of the contemporaneous-objection rule. If defendants were going to raise a long list of objections, they would already be doing that so the issues could receive full de novo, and not just plain-error, review. See Maiz v. Virani, 253 F.3d 641, 676 (11th Cir. 2001) ("Plain error review is an extremely stringent form of review." (internal quotation marks and citation omitted)).

9

## Procedural Default

The dissent also notes that Higdon has not "waived" the issue because he "could not have intentionally relinquished or abandoned a right that our own precedent flatly denied him at the time his initial brief was filed." The dissent argues that a litigant should be able to raise a new issue based on an intervening Supreme Court decision at any time in the direct appeal process even if the defendant had not preserved the issue. However, the dissent's position is not only flawed, but internally inconsistent. In effect, the dissent recognizes that procedural default of an issue should be enforced at the trial level and result in plain-error review on appeal, but that this Court is powerless to enforce its own prudential rules if an issue is not raised in the opening brief on appeal. As Judge Carnes stated in <u>Ardley</u>: "If the retroactivity doctrine requires that we address issues that have been procedurally defaulted on appeal, why does it not require that we address full bore those issues that have been procedurally defaulted at trial instead of limiting our review to plain error?" <u>Ardley</u>, 273 F.3d at 993 (Carnes, J., concurring in the denial of rehearing <u>en banc</u>). That is, "[t]he retroactivity doctrine either trumps the procedural default doctrine or it does not. Our position, which is consistent, is that it does not." <u>Id</u>.

## Other Developments

10

Other recent developments further illustrate the constitutionality and sensibility of this Court's continued application of its prudential rules in a uniform and consistent manner.

As noted earlier, in Booker, the Supreme Court instructed courts to "apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review." Booker, 125 S. Ct. at 769. However, the Supreme Court emphasized that the fact that Booker was to be applied to cases on direct review did not mean "that every sentence gives rise to a Sixth Amendment violation [or] that every appeal will lead to a new sentencing hearing." Id. In fact, the Supreme Court directed courts to "apply ordinary prudential doctrines [including], for example, whether the issue was raised below . . . ." Id. Therefore, the Booker Court has already rejected the very essence of the argument the dissent is making. If the position that retroactivity trumps ordinary prudential rules were correct, the Supreme Court would not have said in Booker itself that ordinary prudential rules were to be applied.

Lest there be any doubt about the constitutionality of this Court's approach, the Supreme Court has applied its own prudential rules to foreclose the ability of defendants to raise Blakely claims. In Pasquantino v. United States, 125 S. Ct. 1766, 1781 n.14 (2005), issued after Booker, the petitioners argued "in a footnote

11

that their sentences should be vacated in light of <u>Blakely</u> . . . ." However, "Petitioners did not raise this claim before the Court of Appeals or in their petition for certiorari." <u>Pasquantino</u>, 125 S. Ct. at 1781 n.14. Although the petitioners failed to previously raise the issue, "[t]his omission was no fault of the defendants, . . . as the petition in this case was filed and granted well before the Court decided <u>Blakely</u>. Petitioners thus raised <u>Blakely</u> at the earliest possible point: in their merits briefing." <u>Pasquantino</u>, 125 S. Ct. at 1783 n.5 (Ginsburg, J., dissenting). Despite the fact that the petitioners raised their <u>Blakely</u> claim at the earliest possible moment after that decision was released, the Supreme Court applied its prudential procedural rules and declined to address the issue. <u>Pasquantino</u>, 125 S. Ct. at 1781 n.14.

If the Supreme Court's prudential procedural rules can be applied to foreclose a <u>Blakely</u> claim while a defendant is still in the direct appeal process, there is no reason why this Court's prudential procedural rules cannot be applied to foreclose a <u>Booker</u> claim.[7]

---

[7]The Supreme Court's post-<u>Booker</u> remand orders do not affect application of our prudential rules. Since <u>Booker</u>, the Supreme Court has remanded over a hundred of our Circuit's cases with the same form order: "The motion of petitioner for leave to proceed *in forma pauperis* and the petition for writ of certiorari is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of <u>United States v. Booker</u>, 543 U.S. ___ (2005)." Some of those cases were ones in which this Court applied its prudential rules and refused to consider defendant's belated efforts to raise <u>Blakely</u>/<u>Booker</u> claims. <u>See, e.g.</u>, <u>Levy v. United States</u>, – S. Ct. –, 2005 WL 540692 (U.S.

Circuit Conformity

The dissent makes a great deal out of the fact that, in its view, this Court is the only circuit to apply its prudential rules in such a way to <u>Booker</u>-pipeline cases. First, as the dissent acknowledges, the Fifth Circuit has declined to consider certain, untimely <u>Booker</u> claims. In <u>United States v. Lewis</u>, – F.3d –, 2005 WL 1394949, at *1 (5th Cir. June 14, 2005); <u>United States v. Taylor</u>, – F.3d –, 2005 WL 1155245 (5th Cir. May 17, 2005), and <u>United States v. Hernanandez-Gonzalez</u>, 405 F.3d 260, 261 (5th Cir. 2005), the Fifth Circuit concluded that "absent extraordinary circumstances" it would not consider <u>Blakely</u>/<u>Booker</u> claims raised for the first time in a reply brief, petition for certiorari or in a petition for

---

June 6, 2005) (No. 04-8942); <u>Sears v. United States</u>, 125 S. Ct. 1348 (2005); <u>Dockery v. United States</u>, 125 S. Ct. 1101 (2005). In <u>Ardley</u>, this Court explained why we do not read anything into these remands:

> Whenever the Supreme Court decides an important issue of law, it routinely takes every case in which the court of appeals decision came out before the new decision was announced and in which the certiorari petitioner claims that new decision might apply, and treats all of those cases the same. The uniform treatment given all such cases is to vacate the court of appeals judgment and remand the case for further consideration in light of the new decision. Those boilerplate orders come out in bushel baskets full. There is no implication in the standard language of those orders that the court of appeals is to do anything except reconsider the case now that there is a new Supreme Court decision that may, or may not, affect the result. We have never felt constrained to read anything into such routine remands other than the direction that we take another look at the case because of the new decision.

<u>Ardley</u>, 273 F.3d at 994 (Carnes, J., concurring in the denial of rehearing <u>en banc</u>). These remands in no way direct how this Court is to apply <u>Booker</u>, nor do they preclude this Court's application of its prudential rules. <u>Sears</u>, 2005 WL 1334892, at *1; <u>Dockery</u>, 401 F.3d at1262-63; <u>Ardley</u>, 273 F.3d at 995 (Carnes, J., concurring in the denial of rehearing <u>en banc</u>). We have now taken another look at the case and reaffirm the application of our prudential rule.

13

rehearing, respectively.

Second, some circuits simply discuss (and often reject) <u>Blakely</u>/<u>Booker</u> claims raised in supplemental briefing without addressing the appropriateness of reviewing tardy claims and, thus, cannot be said to have explicitly declined to apply the prudential rule that we apply.

Third, the mere fact that this Court has elected to apply its prudential rules in a uniform manner does not create any form of unconstitutional, or even unwarranted, sentence disparities between defendants. Although judges may disagree, not every disagreement between the circuits results in some form of unconstitutional or unwarranted sentences.

For all the above reasons, I concur in the Court's denial of rehearing <u>en banc</u>.

TJOFLAT, Circuit Judge, dissenting from the denial of rehearing en banc:

On May 9, 2003, a jury in the U.S. District Court for the Middle District of Alabama convicted Jerry Higdon of two counts of distribution of five or more grams of "ice" methamphetamine in violation of 21 U.S.C. § 841(a)(1), one count of possession with the intent to distribute five or more grams of ice in violation of 21 U.S.C. § 841(a)(1), and one count of drive-by shooting in violation of 18 U.S.C. § 36(b).[1]  Under 21 U.S.C. § 841(b)(1)(B), each of the three drug offenses carried a minimum term of imprisonment of five years and a maximum term of forty years.  Drive-by shooting was punishable by up to twenty-five years in prison.  18 U.S.C. § 36(b)(1).

In his Presentence Investigation Report (PSI), the probation officer calculated that Higdon's offenses involved more than thirty-five ounces (roughly 1000 grams) of methamphetamine and more than four kilograms of marijuana.  Higdon objected to this calculation, arguing that the unindicted marijuana should not have been included and that only 23.58 grams of ice was attributable to him by

---

[1] Higdon was found not guilty of conspiring to distribute ice methamphetamine in violation of 21 U.S.C. § 846(a)(1), on an additional substantive count of distribution of ice in violation of 21 U.S.C. § 841(a)(1), on an additional substantive count of possession with the intent to distribute ice in violation of 21 U.S.C. § 841(a)(1), and on three counts of using a firearm in relation to the charged drug crimes in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (iii), and (B)(i), respectively.

a preponderance of the evidence.[2]  The court overruled these objections and set the base offense level at 36, as the PSI recommended.  The court's calculation included thirty-four ounces of ice and three-plus kilograms of marijuana that were attributed to Higdon solely on the basis of the trial testimony and proffer of a co-defendant testifying pursuant to a plea agreement.  Had Higdon's objections been sustained, his base offense level would have been 28.

The PSI also recommended that the offense level be increased four levels because Higdon "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," U.S.S.G. § 3B1.1(a), two levels because he obstructed justice, U.S.S.G. § 3C1.1, and two levels because he possessed a dangerous weapon during the course of his offenses, U.S.S.G. § 2D1.1(b)(1).  Higdon objected to the PSI's characterization of his role in the offense, arguing that he was in fact entitled to a two-level reduction because he played a minor role in the offense.  He also objected to the obstruction-of-justice enhancement and to the PSI's recommendation that he not receive a reduction for acceptance of responsibility.

---

[2] In its verdict, the jury specifically found that five or more grams of ice were involved in each of the three offenses of which Higdon was convicted.  The indictment charged that these three offenses involved a total of 20.9 grams.  In his objection to the PSI's calculation, Higdon argued that his sentence should be computed based on a drug quantity of 23.58 grams of ice.

The court overruled all of Higdon's objections and set his total offense level at 44, as the PSI recommended.[3]  Even with a criminal history score of zero (a criminal history category of I), the Guidelines called for concurrent sentences of life in prison.  Because none of the offenses for which Higdon was convicted individually permitted a life sentence, the Guidelines required the court to order that the sentences run consecutively,[4] resulting in a total sentence of 145 years in prison.  In contrast, had all of Higdon's objections been sustained, his total offense level would have been 24, which, coupled with a criminal history category of I, would have yielded a guideline range of 60 to 63 months.

Higdon appealed his convictions and sentences and filed his initial brief on January 28, 2004.  In the brief, Higdon raised four issues related to his convictions and challenged his sentences on the ground that the district court erred in calculating the amount of drugs for which he was responsible, but he did not argue that it was unconstitutional for the court to have made that determination.  Higdon filed a reply brief addressing the same issues as his initial brief on April 16, 2004.

---

[3] The drug offenses were "grouped" together pursuant to U.S.S.G. § 3D1.2(d), and the drive-by shooting was then "grouped" with this first group, also pursuant to § 3D1.2(d).

[4] See U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.").

On June 24, 2004, in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the Supreme Court held that the Washington State Sentencing Guidelines violated the Sixth Amendment right to a trial by jury.  Id. at __, 124 S. Ct. at 2537-38.  In so holding, the Court clarified the rule it had announced in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."):

> the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

Blakely, __ U.S. at __, 124 S. Ct. at 2537.  Dissenting in Blakely, Justice O'Connor observed that the Washington Guidelines and the Federal Sentencing Guidelines were, in all significant respects, virtually indistinguishable.  Id. at __, 124 S. Ct. at 2548-50 (O'Connor, J., dissenting).  Then, as expected, in United

18

States v. Booker, __ U.S. __, 125 S. Ct. 738, 755-56, 160 L. Ed. 2d 621 (2005), the Court extended Blakely to the Federal Guidelines. To remedy the Federal Guidelines' constitutional defect, the Court excised the statutory provision that made the Guidelines mandatory. Id. at __, 125 S. Ct. at 756-57.[5] Now, the Guidelines are "effectively advisory," and although a sentencing court must "consider Guidelines ranges," it may "tailor the sentence in light of other statutory concerns as well." Id. at __, 125 S. Ct. at 757.

Prior to Blakely, this and every other circuit had unequivocally upheld the Guidelines against Blakely-type challenges. See Blakely, __ U.S. at __, 124 S. Ct. at 2547 n.1 (O'Connor, J., dissenting) (collecting cases); United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001) (en banc) ("Apprendi does not apply to judge-made determinations pursuant to the Sentencing Guidelines."). Thus, it "comes as little surprise" that Higdon did not make such a claim in his opening brief. United States v. McDaniel, 398 F.3d 540, 546 nn.3-4 (6th Cir. 2005). Within a month of the Blakely decision, however, Higdon filed a "motion for leave to file supplemental argument" and an accompanying brief asserting that his sentence was unconstitutional under Blakely. The panel denied that motion, citing

---

[5] The Court also excised 18 U.S.C. § 3742(e), which provided for de novo review of departures from the applicable guideline range. Appellate courts now review sentences only for reasonableness. See Booker, __ U.S. at __, 125 S. Ct. at 764-66.

19

United States v. Curtis, 380 F.3d 1308 (11th Cir. 2004), and United States v. Levy, 379 F.3d 1241, reh'g en banc denied, 391 F.3d 1327 (11th Cir. 2004), vacated and remanded, 545 U.S. __, __ S. Ct. __, 2005 WL 540692 (June 6, 2005) (No. 04-8942).  The panel then affirmed Higdon's convictions and sentences without addressing the merits of his Blakely claim.

The Supreme Court has clearly held "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final."  Griffith v. Kentucky, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987).  In this circuit, however, this principle only applies if the defendant timely raised the issue in his initial brief on appeal—even in a case in which the "new rule" was not announced until after that brief was filed.  Levy, 379 F.3d at 1242.  This rule dates to United States v. Ardley, 242 F.3d 989, reh'g en banc denied, 273 F.3d 991 (11th Cir. 2001), which refused to consider a defendant's Apprendi-based challenge even though the Supreme Court had remanded his case to us for reconsideration in light of Apprendi.  Id. at 990.  Compare with Stutson v. United States, 516 U.S. 193, 197, 116 S. Ct. 600, 603, 133 L. Ed. 2d 571 (1996) ("[A] GVR order both promotes fairness and respects the dignity of the Court of Appeals by enabling it to consider potentially relevant decisions and arguments that were not previously before it."

20

(emphasis added)). The bar this rule imposes is absolute: claims such as Higdon's are effectively barred on both direct appeal and collateral review, and they cannot form the basis of an ineffective assistance of counsel claim. See Levy, 391 F.3d at 1334 n.3 (Hull, J., concurring in the denial of rehearing en banc); Ardley, 273 F.3d at 993-94 (Carnes, J., concurring in the denial of rehearing en banc). We are apparently the only circuit to apply the prudential issues-not-briefed-are-waived rule in such a strict fashion. See Levy, 391 F.3d at 1345-48 & nn.15-17 (Tjoflat, J., dissenting from the denial of rehearing en banc).

In my dissent from the denial of rehearing en banc in Levy, I explained at length that the Ardley/Levy rule is inconsistent with Supreme Court precedent, squarely in conflict with the decisions of every other circuit, and, notwithstanding all else, quite simply an imprudent application of a prudential rule. See generally id. at 1335-51. I summarized my disagreement with the rule as follows:

> First, it unjustifiably limits the principle of Griffith v. Kentucky, 479
> U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), that "a new rule
> for the conduct of criminal prosecutions is to be applied retroactively
> to all cases . . . pending on direct review or not yet final." Id. at 328,
> 107 S. Ct. at 716 (emphasis added). Second, by [conflating the terms
> "waiver" and "forfeiture," it] unduly limits our scope of review under

21

Federal Rule of Criminal Procedure 52(b), as interpreted by the

Supreme Court in United States v. Olano, 507 U.S. 725, 113 S. Ct.

1770, 123 L. Ed. 2d 508 (1993).[6]  Third, it continues a circuit split

that finds this court standing alone.  Fourth, it sends a clear message

to appellate counsel that they should brief every colorable

claim—even those claims that are squarely foreclosed by our own

precedent—or else risk costing their clients the benefit of a favorable

intervening decision.  As a result, counsel will be tempted to be less

discriminating in selecting issues to be argued on appeal, and briefs

will necessarily be less specific and clear, which will in turn

---

[6] Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  By its terms, the rule not only authorizes an appellate court to consider errors not brought to the trial court's attention, but also permits the appellate court to consider errors not raised by the parties on appeal, i.e., to raise issues sua sponte.  See, e.g., Herzog v. United States, 226 F.2d 561, 569-70 (9th Cir. 1955) ("The words 'the court' refer to the court which notices the error and the clear meaning of the sentence is that a court may notice plain or prejudicial error although not brought to the attention of the court noticing the error. . . . The manifest intent of the rule is to permit courts sua sponte to notice error . . . ."), op. adhered to on reh'g en banc, 235 F.2d 664 (9th Cir. 1956) (en banc); Charles Alan Wright et al., 3B Federal Practice and Procedure: Criminal 3d § 856 ("Ordinarily Rule 52(b) is invoked by counsel who, in preparing an appeal, discover what they consider to be an error to which no objection was taken below. The rule is not so limited, however, and the appellate court may take notice of an error on its own motion though it is never put forward by counsel.").  The Ardley/Levy rule, therefore, has the effect of depriving panels of this court of discretion Rule 52(b) expressly confers.  This effective limited repeal of Rule 52(b) has no basis in Supreme Court precedent.  Indeed, the inflexibility of our rule is obviously inconsistent with the case-by-case approach to plain-error analysis Olano requires.  See Olano, 507 U.S. at 731-37, 113 S. Ct. at 1776-79.

22

significantly hinder the fair and efficient administration of justice in this circuit.

Levy, 391 F.3d at 1336-37 (footnotes omitted).  Although I remain firmly convinced that we should abandon the Ardley/Levy rule for these reasons, I will not repeat here all that I said in those cases.  Instead, I write briefly only to explain two additional problems with our rule that I have not discussed previously.

In Levy, I observed that "the eleven other federal circuits that have been presented with claims like [the one at issue in this case] have all considered the merits of those claims."  Id. at 1347-48; see id. at 1345-48 & nn.15-17 (collecting cases).  Post-Booker, it continues to be clear that our approach is contrary to that of every other circuit.  For example, in United States v. Washington, 398 F.3d 306 (4th Cir. 2005), the Fourth Circuit held that "[a]lthough appellate contentions not raised in an opening brief are normally deemed to have been waived, the Booker principles apply in this proceeding because the [Supreme] Court specifically mandated that we 'must apply [Booker] . . . to all cases on direct review.'"  Id. at 312 n.7 (citation omitted) (quoting Booker, __ U.S. at __, 125 S. Ct. at 769).  The court then vacated the defendant's sentence as plain error under Booker.  Id. at 312.

In United States v. McDaniel, 398 F.3d 540 (6th Cir. 2005), the Sixth Circuit held that the defendants had not "waived" their Booker claims "[b]ecause neither Booker nor Blakely had been decided when [they] were sentenced or when [their] briefs were due [on appeal], and because neither [defendant had] taken any affirmative steps manifesting an intention to relinquish or abandon Booker rights." Id. at 546. Indeed, the court remarked that the defendants' failure to raise Booker-type claims at trial or on appeal "[came] as little surprise given the prior statements of [the Sixth Circuit] that Apprendi did not invalidate the federal Sentencing Guidelines." Id. at 546 n.3. The court then vacated the defendants' sentences as plain error under Booker. Id. at 550.

In United States v. Macedo, 406 F.3d 778 (7th Cir. 2005), the Seventh Circuit considered a Blakely/Booker claim first advanced in a petition for rehearing:

> Despite the government's arguments to the contrary, Macedo has not waived [his Blakely/Booker] argument by failing to argue [it] on appeal. In a direct appeal, a defendant might preserve his Blakely and Booker arguments by raising them in subsequent filings. See United States v. Henningsen, 387 F.3d 585, 591 (7th Cir. 2004) ("Although [the defendant] did not raise the issue of constitutionality in his brief, he made notice of the Blakely and Booker decisions in a subsequent filing and raised the issue during argument. In light of the uncertainty surrounding this issue and the questionable constitutionality of [the defendant's] sentencing enhancement, we do not find that [the defendant] has waived his right to challenge the validity of the district

24

court's sentencing enhancement"); see also United States v. Pree, 384 F.3d 378, 396 (7th Cir.2004) ("Given the precedent in this circuit prior to Blakely, we think it would be unfair to characterize [the defendant] as having waived a challenge to the validity of her sentencing enhancement."). Macedo has done so here by virtue of filing a petition for rehearing.

Macedo, 406 F.3d at 789. The court then remanded the defendant's case pursuant

to its decision in United States v. Paladino, 401 F.3d 471 (7th Cir. 2005). Macedo,

406 F.3d at 790.[7]

In United States v. Clifton, 406 F.3d 1173,(10th Cir. 2005), the Tenth

Circuit stated,

> The Supreme Court decided [Blakely] and [Booker] during the pendency of Defendant's appeal. We must apply the holdings in Blakely and Booker to all cases in which a defendant properly raised an issue under either case. Booker, 125 S.Ct. at 769. Defendant properly raised her Sixth Amendment issues in a supplemental brief. Compare United States v. Lindsey, 389 F.3d 1334, 1335 n.1 (10th

---

[7] The First Circuit recently rejected a similar "waiver" argument:
[T]he government . . . argues that the defendant has waived the Blakely/Booker argument by failing to raise it in his initial brief on appeal. While we have often reiterated that issues raised only in a reply brief or at oral argument are generally considered waived, we will exercise our discretion to consider new issues under exceptional circumstances. In the instant case, the parties' briefs were submitted prior to a substantial change in the applicable law wrought by the Supreme Court's decisions in Blakely and Booker. This change constitutes an "exceptional circumstance" in which we will permit new issues to be raised, and we accordingly accepted supplemental briefing from both sides. Likewise, in our recent decision in United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir.2005), another panel of this court considered the merits of a Booker argument not raised in appellant's opening brief.
United States v. Vazquez-Rivera, 407 F.3d 476, 487-88 (1st Cir. 2005) (footnote and citations omitted).

Cir. 2004).

Clifton, 406 F.3d at 1175 n.1. The court then went on to vacate the defendant's sentence as plain error under Booker. In the Lindsey footnote cited by the Clifton court, a Tenth Circuit panel had refused to consider a claim raised in a letter filed under Federal Rule of Appellate Procedure 28(j) because the defendant had failed to request permission to file a supplemental brief properly raising his Blakely claim. The Eighth Circuit appears to have taken this position as well: defendants will be allowed to raise Blakely/Booker claims in supplemental briefs, but claims raised in 28(j) letters will not be considered.[8] Thus, although there may be minor differences among the approaches of other circuits—some require a properly filed supplemental brief, while others accept any sort of supplemental filing, while still others have raised the issue sua sponte—no other court has adopted our extreme approach. See generally Levy, 391 F.3d at 1345-48 & nn.15-17 (Tjoflat, J.,

---

[8] In United States v. Cramer, 396 F.3d 960 (8th Cir. 2005), the Eighth Circuit refused to consider a Blakely/Booker claim first raised in a Rule 28(j) letter. Id. at 962 n.3. The court explained that although Rule 28(j) "provides a method whereby a party may supplement cited authorities after filing briefs or after oral argument," "a party may not raise arguments for the first time in a Rule 28(j) letter." Id. Accordingly, because the defendant failed to request "permission to file a supplemental brief properly raising the Blakely issue," the court "refuse[d] to consider the matter." Id. Thus, the court all but explicitly stated that it would have considered the issue had it been raised in a properly filed supplemental brief. Then, in United States v. Mooney, 401 F.3d 940, 949 (8th Cir. 2005), the Eighth Circuit did, in fact, consider a Blakely/Booker claim first raised in a properly filed supplemental brief. Indeed, it may be that the Eighth Circuit will now consider even claims raised in 28(j) letters. On March 22, the Cramer panel vacated its original opinion and authorized supplemental briefs on the Booker issue. United States v. Cramer, 2005 U.S. App. LEXIS 4705 (8th Cir. Mar. 22, 2005).

dissenting from the denial of rehearing en banc).[9]

[9] Post-Booker, the Fifth Circuit has held that "absent extraordinary circumstances" it will not consider Blakely/Booker claims first raised in a reply brief, a petition for rehearing, or a petition for certiorari. United States v. Lewis, __ F.3d __, 2005 WL 1394949, at *1 (5th Cir. June 14, 2005) (reply brief); United States v. Taylor, __ F.3d __, 2005 WL 1155245, at *1 (5th Cir. May 17, 2005) (refusing to consider a claim first raised in a petition for certiorari and citing Ardley among other cases); United States v. Hernandez-Gonzalez, 405 F.3d 260, 261-62 (5th Cir. 2005) (refusing to consider a claim first raised in a petition for rehearing and citing Ardley and Levy among other cases). In each of these cases, the court has first determined that the defendant could not pass the plain-error test and then held that, a fortiori, he/she could not establish "extraordinary circumstances." As a result, the Fifth Circuit has not yet been pressed "to determine what constitutes 'extraordinary circumstances.'" Lewis, __ F.3d at __, 2005 WL 1394949, at *1. (While the First Circuit applies a similar rule that "issues raised only in a reply brief or at oral argument are generally considered waived" and will only be considered "under exceptional circumstances," it has held that Blakely and Booker standing alone constitute an "exceptional circumstance." Vazquez-Rivera, 407 F.3d at 487. Thus, the Fifth Circuit's "extraordinary circumstances" rule may well turn out to require little more than that the defendant establish plain error.)

Although the Fifth Circuit's rule appears similar to our Ardley/Levy rule, the two rules differ in practice in at least two quite important respects. The first is that the Fifth Circuit actually reviews the defendant's claim for plain error before determining whether the defendant can establish "extraordinary circumstances." In contrast, "[t]his Court has simply determined that no manifest injustice results if it declines to consider untimely Booker claims on appeal." Ante, at __ n.5. That is, the presence or absence of reversible plain error is irrelevant to our rule. See. e.g., United States v. Dockery, 401 F.3d 1260, 1262-63.

The second practical difference between its rule and ours is that the Fifth Circuit is far less likely to find that a defendant has "waived" the Booker issue. For example, in United States v. Akpan, 407 F.3d 360 (5th Cir. 2005), the Fifth Circuit stated,

> The government argues that [the defendant] has not properly preserved his Booker objection and that we should review [his] challenge for plain error. [The defendant] did not, however, fail to preserve his Booker challenge to the district court's loss calculation. Our review of [his] pre-sentencing objections . . . and his objections during his sentencing reveal that [he] repeatedly objected to the district court's determination of a range of financial loss between five and ten million dollars on the ground that that figure had not been proven at trial. [He] also consistently urged that the district court confine its determination of loss to the amount alleged in the indictment. Although [the defendant] never explicitly mentioned the Sixth Amendment, Apprendi, or Blakely until his Rule 28(j) letter, we are satisfied that his objections adequately apprised the district court that [he] was raising a Sixth Amendment objection to the loss calculation because the government did not prove to the jury beyond a reasonable doubt that the loss was between five to ten million dollars. When, as here, a defendant preserves his

Most recently, in <u>United States v. Ameline</u>, __ F.3d __, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc), the en banc Ninth Circuit observed that "<u>Booker</u> explicitly stated that its holding applies to all cases pending on direct appeal." <u>Id.</u> at *11. The court, therefore, held that "[e]ven where the briefs filed by the parties do not raise a <u>Booker</u> objection, . . . the issue may be raised and should be considered." <u>Id.</u> All eleven judges on the <u>Ameline</u> en banc panel apparently agreed with this holding.

This clear, one-sided circuit split raises two problems that I did not address in <u>Levy</u>. First, the fact that we treat similarly situated defendants differently than eleven other circuits is itself inconsistent with <u>Griffith</u>. <u>Griffith</u> held that the

---

error, [we review for harmless error, not plain error].
<u>Id.</u> at 375-76 (emphasis added) (footnotes omitted); <u>see also</u> <u>id.</u> at 375 n.48 ("After the Supreme Court handed down [<u>Blakely</u>], both appellants raised <u>Blakely</u> challenges to their sentences in a Rule 28(j) letter to this court."); <u>id.</u> at 376 n.53 (citing cases holding that an objection to the district court's drug-quantity calculation is sufficient to preserve a <u>Blakely</u>/<u>Booker</u> claim). Higdon's objections in the district court and in his first brief on appeal were substantially similar to those described by the Fifth Circuit in <u>Akpan</u>. Thus, if Higdon had sold ice in Fifth Circuit Mississippi rather than Eleventh Circuit Alabama, his <u>Blakely</u>/<u>Booker</u> claim would have been reviewed for <u>harmless</u> error rather than not at all.

To be clear, I do not agree with the Fifth Circuit's reasoning in <u>Lewis</u>, <u>Taylor</u>, and <u>Hernandez-Gonzalez</u>, and, moreover, I am not sure that those cases are consistent with prior Fifth Circuit precedent, <u>see, e.g.</u>, <u>United States v. Clinton</u>, 256 F.3d 311, 313 (5th Cir. 2001) ("This case is on remand from the United States Supreme Court for further consideration in light of [<u>Apprendi</u>]. <u>Apprendi</u> was decided after this Court affirmed [the defendant's] convictions and sentences on direct appeal, and the arguments presented herein were not presented to the district court or this Court on initial appeal. We have, therefore, carefully considered the record in light of [the defendant's <u>Apprendi</u>-based] arguments on remand and the plain error standard of review." (citation omitted)). Nevertheless, as a practical matter, even that circuit has not gone so far was we have in <u>Ardley</u>, <u>Levy</u>, and progeny.

28

"failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication" because

> selective application of new rules violates the principle of treating similarly situated defendants the same. . . . [T]he problem with not applying new rules to cases pending on direct review is "the <u>actual inequity</u> that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary" of a new rule.

<u>Griffith</u>, 479 U.S. at 322, 107 S. Ct. at 713 (quoting <u>United States v. Johnson</u>, 457 U.S. 537, 556 n.16, 102 S. Ct. 2579, 2590 n.16, 73 L. Ed. 2d 202 (1982) (citation omitted).

Several months prior to <u>Griffith</u>, in <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Court had established a new, more defendant-friendly test for evaluating claims that a prosecutor's peremptory challenges were motivated by race in violation of the Equal Protection Clause. <u>Id.</u> at 96-98, 106 S. Ct. at 1723-24. The only question in <u>Griffith</u> was whether <u>Batson</u>'s holding should apply to Griffith's case even though it constituted a "clear break" with prior Supreme Court precedent. The Court answered this question in the affirmative and abandoned its old "clear break exception" to retroactivity.[10] It

---

[10] Pre-<u>Griffith</u>, "where the Court . . . expressly declared a rule of criminal procedure to be 'a clear break with the past,' it almost invariably [went] on to find such a newly minted principle nonretroactive." <u>Johnson</u>, 457 U.S. at 549, 102 S. Ct. at 2587 (quoting <u>Desist v. United States</u>, 394 U.S. 244, 248, 89 S. Ct. 1030, 1033, 22 L. Ed. 2d 248 (1969)).

observed that Batson and Griffith "were tried in [the same state court] approximately three months apart," that the "same prosecutor exercised peremptory challenges at the trials," and that "[i]t was solely the fortuities of the judicial process that determined the case [the Supreme Court] chose initially to hear on plenary review."  Griffith, 479 U.S. at 327, 107 S. Ct. at 715.  The Court reasoned that "it hardly comports with the ideal of administration of justice with an even hand, when one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine."  Id. (quoting Hankerson v. North Carolina, 432 U.S. 233, 247, 97 S. Ct. 2339, 2347, 53 L. Ed. 2d 306 (1977) (Powell, J., concurring in the judgment)) (internal quotation marks omitted).

Likewise, it hardly comports with the ideal of evenhanded justice when similarly situated defendants are treated differently based only on the location of the federal court in which they were sentenced.  District courts in the Eleventh Circuit sentence approximately ten percent of all defendants sentenced in the federal courts.[11]  Accordingly, while ninety percent of all defendants who did not

---

[11] See Administrative Office of the U.S. Courts, Judicial Business of the United States Courts 2004, at 227-29 tbl. D-7, available at http://www.uscourts.gov/judbus2004/appendices/d7.pdf (reporting that Eleventh Circuit district

30

raise <u>Blakely</u>/<u>Booker</u> claims in their initial briefs (for the imminently sensible reason that such claims were squarely foreclosed by then-controlling precedent) will be permitted to raise these now-viable claims in some sort of supplemental filing, the similarly situated ten percent who were sentenced in our circuit[12] will be precluded from doing so for no other reason than that they were sentenced in our circuit. Stated differently, our <u>Ardley</u>/<u>Levy</u> rule results in nonretroactivity in one in ten similar federal appeals for reasons that are irrelevant to either the merits of the case or the justifications for the general rule that a new rule for the conduct of criminal prosecutions must be applied retroactively to all cases not yet final. For this reason alone, the rule is inconsistent with <u>Griffith</u>, even assuming that it can be justified in the first place.[13]

courts processed 7,236 of the 73,316 defendants convicted and sentenced in the federal courts in the year ending September 30, 2004).

[12] Concurring in the denial of rehearing en banc in <u>Levy</u>, Judge Hull argued that <u>Griffith</u> did not require us to address the defendant's <u>Blakely</u> claim because a defendant who failed to include such a claim in his opening brief—even when his opening brief was due before <u>Blakely</u> was decided—was not "similarly situated" to a defendant who had included such a claim. <u>Levy</u>, 391 F.3d at 1330-31. I obviously disagree, but even assuming this to be true, it must be clear that defendants sentenced in the Eleventh Circuit who did not raise <u>Blakely</u>/<u>Booker</u> claims in their opening briefs on appeal are, in all relevant respects, similarly situated to defendants sentenced in other circuits who did not raise <u>Blakely</u>/<u>Booker</u> claims in their opening briefs on appeal.

[13] I in no way mean to suggest that the principle of <u>Griffith</u> is violated every time there is a discernible circuit split as to <u>how</u> a new rule is to be applied to cases pending on direct review. For example, the circuits are currently split as to how the plain-error doctrine applies to <u>Booker</u> errors. <u>See</u> <u>United States v. Pirani</u>, 406 F.3d 543, 562-63 (8th Cir. 2005) (en banc) (Bye, J., concurring in part and dissenting in part) ("The phrase 'three-ring circus' (referring to the three-way circuit split) has been used to describe the federal circuits' disparate handling of <u>Booker</u>

31

The second problem created by the current circuit split involves the Sentencing Reform Act (SRA) itself.  One of the primary purposes of the SRA was to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); see also Kate Stith & Jose A. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 104 (1998) ("Reduction of 'unwarranted sentencing disparities' was a—probably the—goal of the Sentencing Reform Act of 1984.").  Indeed, district courts are to take this goal into account every time they impose a sentence.  18 U.S.C. § 3553(a)(6).  Under the new, post-Booker sentencing model, this court must also consider this goal when reviewing sentences for reasonableness.  See Booker, __ U.S. at __, 125 S. Ct. at 769; McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) ("District judges must [apply the Guidelines] as guidelines, with appellate review to determine whether that task has been carried out reasonably.").

---

pipeline cases.  Such a phrase is descriptive[.] [N]onetheless, it is probably more appropriate to characterize the split as a three-ring circus with twelve unique acts each attempting to dazzle us with its compelling logic.").  Obviously, some circuits are wrong and others are right, but this differential application of Booker does not implicate Griffith.  The instant case, however, involves an eleven-to-one circuit split as to whether new rules should be applied at all to a distinct, easily identifiable subset of cases pending on direct review.  Because Griffith demands equal treatment of similarly situated defendants whose cases are still in the pipeline when a new rule is announced, the very fact that our court is the only court that will not apply a new rule to cases such as this one is in itself inconsistent with Griffith.

32

No other circuit holds that defendants like Higdon have "waived" their Blakely/Booker claims. Consequently, whereas most similarly situated defendants in other circuits will be resentenced under the new advisory-guideline model, all such defendants in our circuit will be stuck with their old, mandatory-guideline sentences. This is problematic because the new model may result in significantly different sentences in many cases. See generally United States v. Rodriguez, 406 F.3d 1261, 1286-89 & nn.8-12 (11th Cir. 2005) (Tjoflat, J., dissenting from the denial of rehearing en banc). To state the obvious, then, this will create sentencing disparity. Moreover, this sort of sentencing disparity is "unwarranted" because it is based on nothing more than the fact that our circuit has applied an unexceptional appellate waiver rule in an unusually harsh manner, whereas other circuits have had the good sense not to do so. And, needless to say, our Ardley/Levy rule has nothing to do with a defendant's criminal history or conduct, which the SRA identify as the guideposts for identifying "similarly situated" defendants. See 18 U.S.C. § 3553(a)(6).

Because the Ardley/Levy rule is prudential only, it should at least yield when, as in Blakely/Booker cases, its application will frustrate the purposes of an important federal statute. Sentencing ten percent of a class of similarly situated defendants under a model that is radically different from the model under which

33

the other ninety percent are sentenced will inevitably produce unwarranted sentencing disparity, meaning that our Ardley/Levy rule is clearly at odds with the purposes of the SRA. The disparity created is all the more glaring because it is based solely on the happenstance of circuit boundaries—that is, a defendant in Fourth Circuit South Carolina will be treated differently than a similarly situated defendant just across the border in Eleventh Circuit Georgia. Cf. Stephen Breyer, Federal Sentencing Guidelines Revisited, 11 Fed. Sentencing Rptr. 180, 180 (1999) (citing a pre-SRA study that "indicated that a defendant sentenced by a Southern judge was likely to serve six months more than the average, while a defendant sentenced in Central California was likely to serve twelve months less" as an example of "unreasonable disparity in sentencing"). Therefore, even accepting the Ardley/Levy rule's continued general application, I would not apply it in this case or to other similarly situated defendants because it frustrates important congressional objectives.

For the foregoing reasons, as well as the reasons given in my dissent in Levy, I dissent from the denial of rehearing en banc.[14]

---

[14] In the concluding footnote of its recent opinion in United States v. Pasquantino, __ U.S. __, 125 S. Ct. 1766 (2005), the Supreme Court stated, "Petitioners argue in a footnote that their sentences should be vacated in light of [Blakely]. Petitioners did not raise this claim before the Court of Appeals or in their petition for certiorari. We therefore decline to address it." Id. at __, 125 S. Ct. at 1781 n.14. Also in a footnote, the dissent responded that "[t]his omission was no fault of the defendants . . . , as the petition in this case was filed and granted well before the

34

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

I join Judge Tjoflat's opinion and dissent from the denial of rehearing en banc in this case for the reasons explained in my dissent from the denial of rehearing en banc in United States v. Levy, 391 F.3d 1327 (11th Cir. 2004). This proceeding involves a question of exceptional importance, see Fed. R. App. P. 35(a)(2), similar to that presented in Levy — whether a criminal defendant has waived his claim under Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531, 159

Court decided Blakely." Id. at __, 125 S. Ct. at 1783 n.5 (Ginsburg, J., dissenting). Thus, the defendants had "raised Blakely at the earliest possible point: in their merits briefing." Id. I will not expend significant space trying to decipher these dueling footnotes, but two points are worth making briefly.

First, the question on which certiorari was granted in Pasquantino was "whether a scheme to defraud a foreign government of tax revenue violates the wire fraud statute," Pasquantino, __ U.S. at __, 125 S. Ct. at 1771; the case had nothing to do with the Federal Sentencing Guidelines. The majority's footnote was thus squarely in line with Supreme Court Rule 14.1(a), which states that "[o]nly the questions set out in the petition [for certiorari], or fairly included therein, will be considered by the Court." Of course, this rule is similar to our own rule regarding issues not raised in the appellant's opening brief, but it goes without saying that the Supreme Court operates quite differently than we do. The Supreme Court exists to decide issues, not to correct errors, and its rule against considering questions not presented in the petition for certiorari is necessary to "maintain the integrity of the process of certiorari. The Court decides which questions to consider through well-established procedures," and permitting the parties "to alter these questions or to devise additional questions at the last minute would thwart this system." Taylor v. Freeland & Kronz, 503 U.S. 638, 646, 112 S. Ct. 1644, 1649, 118 L. Ed. 2d 280 (1992). The policies underpinning the Ardley/Levy rule are, to say the least, of a considerably lesser magnitude.

Second, assuming that the Pasquantino footnote means something, I do not think that it undermines my position. The Pasquantino Court "decline[d] to consider" the Booker issue because the defendants had not raised it "before the Court of Appeals or in their petition for certiorari." Higdon, of course, has raised the issue "before the Court of Appeals" in the form of a motion to file a supplemental brief, which we denied. I have no doubt that he will also include the issue in his petition for certiorari. Therefore, Higdon is not in the same position as the defendants in Pasquantino, and the footnote does not suggest that his Booker claim is waived.

35

L. Ed. 2d 403 (2004), and <u>Booker v. United States</u>, __ U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), on direct review because he did not raise it in his initial appellate brief, when the law of this Circuit had already specifically rejected such a claim at the time the initial brief was filed. <u>See</u> <u>Levy</u>, 391 F.3d at 1351 (Barkett, J., dissenting from denial of reh'g en banc).

I believe, as I did in <u>Levy</u>, that this Circuit is applying its procedural bar rules in a manner inconsistent with the U.S. Constitution pursuant to <u>Griffith v. Kentucky</u>, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), and inconsistent with the goals of efficiency and conservation of judicial and parajudicial resources that our procedural bar rules serve. <u>See</u> <u>Levy</u>, 391 F.3d at 1351-52, 1356 (Barkett, J., dissenting from denial of reh'g en banc). Moreover, I think this Circuit incorrectly deems Higdon's <u>Blakely</u>/<u>Booker</u> claim as "waived." Waiver requires intentional relinquishment or abandonment of a known right. <u>See</u> <u>id.</u> at 1352-54 (Barkett, J., dissenting from denial of reh'g en banc). Higdon could not have intentionally relinquished or abandoned a right that our own precedent flatly denied him at the time his initial brief was filed. <u>Id.</u> Any "failure" on Higdon's part in raising the claim in his initial brief was dictated by our own precedent, and thus his <u>Blakely</u>/<u>Booker</u> claim cannot fairly be considered "waived." <u>Id.</u>

36