**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH EARL ROY,

Defendant - Appellant.

No. 04-6282
(W.D. Oklahoma)
(D.Ct. No. CR-03-213-3-A)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Kenneth Earl Roy appeals his sentence imposed after pleading guilty to one count of distributing approximately twenty grams of a mixture or substance

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

containing a detectable amount of cocaine base (crack) on March 11, 2003, in violation of 21 U.S.C. § 841(a)(1).[1] The statute of conviction, in a case involving five grams or more of crack, provides for a penalty of not less than five nor more than forty years imprisonment. *See* 21 U.S.C. § 841(b)(1)(B)(iii). Roy was sentenced to 188 months imprisonment. He contends his sentence violates the rule announced in *United States v. Booker*, -- U.S. --, 125 S.Ct. 738, 746 (2005) (invalidating the federal sentencing guidelines insofar as they are mandatory). Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we REMAND for re-sentencing.

**BACKGROUND**

In a presentence interview, Roy admitted to the probation officer who prepared the Presentence Investigation Report (PIR)[2] that he sold twenty grams of crack to a confidential informant, as charged in the count to which he pled guilty. In his objections to the PIR, *see* FED. R. CRIM. P. 32(f) (providing procedure for objecting to PIR), Roy also admitted to trafficking in an additional twenty-four grams of crack. He thus admitted to trafficking in a total of forty-four grams of

---

[1] On October 22, 2003, Roy, along with others, was charged in a twelve-count Indictment with various drug trafficking offenses involving the distribution of crack. He was named in eleven counts. Pursuant to a plea agreement, he pled guilty to Count 3 of the Indictment.

[2] The PIR utilized the November 2003 edition of the United States Sentencing Commission's *Guidelines Manual*. Unless noted otherwise, all references to the guidelines are to this edition.

crack. The guidelines provide for a base offense level of 30 when the quantity of crack involved in an offense exceeds thirty-five grams but is less than fifty grams. *See* USSG §2D1.1(c)(5). However, relying on Drug Enforcement Agency (DEA) investigative reports, the PIR calculated a base offense level of 34 based on Roy's relevant conduct.[3] *See* USSG §2D1.1(c)(3) (providing for a base offense level of 34 when offense involves at least 150 grams but less than 500 grams of crack). According to the PIR, Roy's relevant conduct included not only the forty-four grams of crack to which he admitted but also 385.90 grams of crack in which he trafficked with others at his place of business, for a total of 429.90 grams of

---

[3] "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* §1B1.3(a)(2) (Relevant Conduct)." USSG §2D1.1, comment. (n.12). USSG §1B1.3(a) provides in part:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level . . . shall be determined on the basis of the following:

(1)   (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)   solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivision[] (1)(A) . . . above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]

crack.[4]

The PIR also recommended a three level adjustment for acceptance of responsibility. *See* USSG §3E1.1. With a total offense level of 31 and a criminal history category of VI, Roy faced a guideline range of imprisonment of 188 to 235 months. By comparison, a total offense level of 27 (base offense level of 30 and a three level adjustment for acceptance of responsibility), together with a criminal history category of VI, would have resulted in a guideline range of imprisonment of 130 to 162 months.

The PIR was completed on March 16, 2004. In his written, paragraph-by-paragraph objections to the PIR, Roy vigorously challenged the relevant conduct drug quantity calculation insofar as it exceeded the forty-four grams of crack to which he admitted. Subsequently, on June 24, 2004, the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531 (2004) (invalidating the application of Washington's sentencing guidelines under the

---

[4] The PIR detailed, in paragraphs 6 through 19, the factual allegations supporting its relevant conduct calculation. We need not detail these factual allegations other than to characterize them as tending to establish Roy was involved to some degree, depending upon the transaction, in crack trafficking at his place of business. He contends he was, at most, an innocent middleman whose benign actions enabled prospective purchasers to connect with distributors. The Government, on the other hand, contends the factual allegations in the PIR persuasively establish that Roy's involvement in each of the transactions comfortably fits within the definition of relevant conduct. *See* USSG §1B1.3.

Sixth Amendment).[5]  On July 28, 2004, Roy was sentenced.

At sentencing, Roy's counsel, citing *Blakely*, objected to the PIR's relevant conduct drug quantity calculation: "My client . . . would just like me to announce to the Court that he would like to preserve any objections under the *Blakely* application that might have an effect on the federal sentencing guidelines."  (R. Vol. 1 at 30.)  The court clarified the objection:

> Now, as I interpret your modification of the specific objections [to the PIR], Mr. Campbell, it is since we have a situation where a judge-made determination of amounts of drugs for which the defendant is responsible is a determination that isn't based upon the content of the charge to which he entered a plea of guilty, and as to which there's been no jury finding, that these adjustments cannot properly be made under the general principles of the *Blakely* case.  Is that fair?

(*Id.* at 32.)  To this, Roy's counsel answered in the affirmative.  The court overruled the objection and averred: "I don't think it [the objection] could be any

---

[5] In *Blakely*, the Court applied its decision in *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") to invalidate the application of Washington's sentencing guidelines under the Sixth Amendment.  In *Blakely*, the sentencing court enhanced a standard sentence under these guidelines.  The facts necessary to support the enhancement were neither admitted by the defendant nor proven to a jury beyond a reasonable doubt.  Even though the enhanced sentence did not exceed the statutory ceiling of imprisonment for the offense, the Court invalidated it.  *Blakely,* 124 S.Ct. at 2538.  In doing so, the Court clarified that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Id.* at 2537 (quotation marks and emphasis omitted).

more thoroughly presented on the record for purposes of later review." (*Id.*) The court added: "But what am I going to do about the paragraph-by-paragraph objections [in the PIR] about quantities and other people and relationships within this group that engaged in the contraband enterprise?" (*Id.*) Roy's counsel responded that his client

> wanted me to inform the Court that other than preserving that [*Blakely*] objection, that he's not going to take any stronger position on the objections than the preservation. And that, further, he does not want to take any action which would appear to vitiate his acceptance [of responsibility], and he wants the Court to know that he does accept [responsibility].

(*Id.* at 33). To this, the court responded: "Well, you know, it is true that a defendant can come here even on a guilty plea and start fighting everything from top to bottom and wind up without an acceptance-of-responsibility adjustment. So that probably was a prudent decision." (*Id.*)

The court then remarked to Government counsel: "Well, that [Roy's decision not to again press his objections] leaves you without the necessity of introducing any evidence, if I understand things correctly . . . ." (*Id.*) Neither party presented evidence.[6] The court declined to consider an upward departure based on the inadequacy of Roy's criminal history category under USSG §4A1.3,

---

[6] According to the Government, it was prepared to substantiate the PIR's factual allegations at sentencing through audio recordings, testimony of visual surveillance by law enforcement officers and the testimony of a co-defendant.

even though the PIR arguably provided grounds for an upward departure on this basis. Furthermore, although the Government declined to move for a downward departure for substantial assistance to authorities under USSG §5K1.1, it informed the court Roy had cooperated with authorities and suggested the court consider his cooperation in determining a sentence within the applicable guideline range. Also, the court agreed with defense counsel that Roy was more likely a user who supported his habit by drug trafficking than a significant distributor of controlled substances. The court imposed a 188 month term of imprisonment, the low end of the guideline range based on a total offense level of 31 and a criminal history category of VI, as calculated in the PIR. This timely appeal followed.

**DISCUSSION**

On January 12, 2005, the Supreme Court decided *Booker*, in which it extended its ruling in *Blakely* to invalidate the federal sentencing guidelines insofar as they were mandatory. 125 S.Ct. at 746. We apply both *Blakely* and *Booker* to this appeal. *See United States v. Clifton,* 406 F.3d 1173, 1175 (10th Cir. 2005) ("*Blakely* and *Booker* [apply] to all cases in which a defendant properly raised an issue under either case.").

In *Booker*, the Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the

defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. The Court

concluded the guidelines would not offend the Constitution if advisory only. *Id.*

at 749-50. To this end, in the remedial portion of its opinion, the Court excised

those provisions mandating application of the guidelines. *Id.* at 756-57. The

Court indicated its decision was applicable to all cases, like this one, on direct

review. *Id.* at 769.

> Applying *Booker,* we have stated:
>
> there are two distinct types of error that a court sentencing prior to
> *Booker* could make. First, a court could err by relying upon
> judge-found facts, other than those of prior convictions, to enhance a
> defendant's sentence mandatorily. As *Booker* makes clear, the Sixth
> Amendment prohibits this practice. As a matter of convenience, we
> will refer to such an error as a constitutional *Booker* error. Second, a
> sentencing court could err by applying the Guidelines in a mandatory
> fashion, as opposed to a discretionary fashion, even though the
> resulting sentence was calculated solely upon facts that were
> admitted by the defendant, found by the jury, or based upon the fact
> of a prior conviction. While this type of sentence does not violate
> the Sixth Amendment, such a sentence is nonetheless impermissible
> because the Court severed the portion of the Sentencing Reform Act
> that required the mandatory application of the Guidelines. We will
> refer to this second type of error as a non-constitutional *Booker* error.

*United States v. Gonzalez-Huerta,* 403 F.3d 727, 731-32 (10th Cir. 2005) (en

banc) (internal quotation marks and citations omitted). Irrespective of the type of

error involved, *Booker* does not necessitate a remand for resentencing in all

instances. Instead, "reviewing courts [are] to apply ordinary prudential doctrines,

determining, for example, whether the issue was raised below and whether it fails

the plain-error test." *Booker,* 125 S.Ct. at 769 (internal quotation marks omitted).

Before we determine which standard of review applies, we must determine whether there was error at all in Roy's sentencing. Roy contends there was constitutional *Booker* error in his sentence because the district court found the facts necessary to support its relevant conduct drug quantity calculation. The Government contends there was no constitutional *Booker* error in Roy's sentencing because he admitted to all of the facts recited in the PIR that supported the relevant conduct determination utilized by the court.[7] Although the record is opaque, we conclude Roy did not admit to the facts necessary to support the court's relevant conduct drug quantity calculation.

The record is clear that prior to sentencing Roy emphatically contested the factual allegations in the PIR supporting the PIR's recommended relevant conduct calculation of 429.90 grams of crack (insofar as it exceeded the forty-four grams of crack to which he admitted). The Government contends Roy "withdrew his objections to the relevant conduct paragraphs" at sentencing. (Appellee's Br. at 11.) We do not agree for two reasons.

First, the Government overstates the record. Roy's counsel stated that

---

[7] The Government adds that because Roy does not argue there was non-constitutional *Booker* error in his sentence, we need not reach the question. Inasmuch as our ruling on Roy's constitutional *Booker* error claim is dispositive, we need not address this contention.

"other than preserving [the *Blakely*] objection . . . [Roy is] not going to take *any stronger position on the objections* [in the PIR] . . . ." (R. Vol. 1 at 33) (emphasis added).) We construe this statement as preserving not only a *Blakely* objection but also the paragraph-by-paragraph objections Roy earlier interposed to the PIR's factual assertions concerning relevant conduct. To be sure, Roy was not going to press his objections with any additional vigor at sentencing, for fear of losing his acceptance of responsibility adjustment, a strategic move the court agreed was prudent. But declining to re-state objections at sentencing, *ad seriatim*, to facts alleged in the PIR is altogether different from admitting those facts. Second, it is counter-intuitive to suppose that Roy was both preserving a *Blakely* objection to the facts alleged in the PIR and, at the same time, admitting those facts. Based on the foregoing, we conclude Roy did not admit to the facts alleged in the PIR that supported the relevant conduct drug quantity calculation. Without an admission to these facts and without a jury having found them beyond a reasonable doubt, Roy's sentencing was plagued with constitutional *Booker* error.

Having determined there was constitutional *Booker* error in Roy's sentencing, we now consider the appropriate standard of review. The Government doubts Roy preserved an objection to judicial fact-finding at sentencing. We disagree. Roy not only clearly stated his *Blakely* objection, but the district court

-10-

took pains to encapsulate it sufficiently for appellate review. We therefore conclude that our review of the constitutional *Booker* error in Roy's sentencing is for harmless error. *See United States v. Windrix,* 405 F.3d 1146, 1158 (10th Cir. 2005). *See also United States v. Lang,* 405 F.3d 1060, 1063-1064 (10th Cir. 2005) (raising *Blakely* objection at sentencing preserves harmless error review for *Booker* error). Ordinarily, this means that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). However, in the case of constitutional error, the Government bears the burden to show that the error is harmless beyond a reasonable doubt. *See Lang,* 405 F.3d at 1065.

Our review for harmless error is complicated by the fact that the record is unclear as to the process by which the district court decided to apply the PIR's calculation of relevant conduct drug quantity. At sentencing, the court "may accept any undisputed portion of the presentence report as a finding of fact," FED. R. CRIM. P. 32(i)(3)(A), or it "must - - for any disputed portion of the presentence report or other controverted matter - - rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]" FED. R. CRIM. P. 32(i)(3)(B). We have already concluded that Roy did not admit to the factual allegations of relevant conduct in the PIR. Therefore, Rule 32(i)(3)(A) does not

apply.[8]  On the other hand, the district court did not rule on the disputed facts

raised by Roy's objections to the PIR, as required by Rule 32(i)(3)(B).

We recognize that at the time of Roy's sentencing, it was uncertain whether

*Blakely* applied to the federal sentencing guidelines.  Consequently, the parties

and the court were operating in muddied waters.  This, no doubt, contributed to

the apparent misunderstanding on the part of the court and the Government as to

whether Roy was withdrawing or preserving his objections to the PIR's

allegations of relevant conduct.  As a consequence, the district court made no

factual findings.  On appeal, the Government in effect asks us to assume the

allegations of relevant conduct contained in the PIR are true for purposes of

determining harmlessness.  This we are loath to do in a case involving

constitutional error.

We also observe there is a significant difference between the guideline

range applicable to Roy based only on his admissions (130 to 162 months

imprisonment) and the guideline range applicable to him based on the PIR's

calculations which were applied by the district court (188 to 235 months

imprisonment).  *See Lang,* 405 F.3d at 1065 (finding constitutional *Booker* error

---

[8] This is true even though the record suggests the district court may have treated Roy's decision not to restate his earlier objections as a withdrawal of his objections. However, even if this is so, it does not alter our conclusion that Roy did not admit to the factual allegations of relevant conduct in the PIR, which is key to our finding of constitutional *Booker* error.

was not harmless when sentences were increased based on facts not admitted by defendants or found by a jury beyond a reasonable doubt). Furthermore, the court sentenced at the low end of the guideline range, declined to consider an upward departure and, no doubt, was influenced in its choice of a low sentence by the Government's indication that Roy had cooperated with authorities. Also, the court agreed with defense counsel that Roy was more likely a user who supported his habit by drug trafficking than a major distributor of controlled substances. This record does little "to convince us beyond a reasonable doubt that the district court would have imposed just as harsh a sentence in the absence of a mandatory guideline regime." *Windrix,* 405 F.3d at 1158. *Compare United States v. Labastida-Segura,* 396 F.3d 1140, 1143 (10th Cir. 2005) (finding non-constitutional *Booker* error was not harmless and indicating "where [the sentence] was already at the bottom of the guidelines range, to say that the district court would have imposed the same sentence given the new legal landscape (even after consulting the Sentencing Guidelines in an advisory capacity) places us in the zone of speculation and conjecture . . . .").

The Government devotes little attention in its brief to an attempt to convince us the constitutional *Booker* error in Roy's sentencing was harmless beyond a reasonable doubt. The nub of its argument is that "[i]t was not error for the district court to accept the factual accuracy of the Presentence Report in

-13-

determining relevant conduct." (Appellee's Br. at 20.) However, we have already found Roy did not admit to the facts supporting the district court's adoption of the PIR relevant conduct drug quantity calculation. Therefore, we conclude the Government has not met its burden of proving that the constitutional *Booker* error in Roy's sentencing was harmless.

**CONCLUSION**

We REVERSE and REMAND this matter to the district court for appropriate fact-finding and resentencing in accordance with *Booker*.


**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge